RECEIVED

JUN - 4 2012

LEONARD GREEN, Clerk

Case No. 12-1128

United States Court Of Appeals For The Sixth Circuit

**American University of Antigua College Of Medicine**

**Plaintiff-Appellee,**

**v.**

**Steven Woodward,**

**Defendant-Appellant.**

<u>**Presentation of Mr. Woodward's Issues**</u>

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267



6/1/2012

## Table of Content:

1. Statement of Facts

2. Brief

3. Conclusion

4. Authorities

5. Certificate of Word Count

6. Certificates of Service

Case: 12-1128   Document: 26   Filed: 06/04/2012   Page: 2

Case: 12-1128    Document: 26    Filed: 06/04/2012    Page: 3

Statement of Facts

Mr. Woodward was born in 1963, is an Honorably Discharged Veteran of the United
States Army, earned degrees in Robotics (AAS, Cum Laude), Engineering (BS), and
Computer Science (MS with Honors). American University of Antigua, AUA, was a
start-up founded in 2004. Woodward attended AUA between 2006 until the December,
2007 "Observation Only" Clinical Orientation 5th Semester at St. Joseph Mercy Oakland
Hospital, SJMO, Trinity Healthcare Network. Woodward published information
including his experiences with AUA and SJMO. This case was intended to violate
Woodward's First Amendment Civil Rights. AUA's verified complaint alleges: Count I
"Federal Trademark/Tradename Infringement" 15 U.S.C. 1125(c), Count II
"Infringement Under the ACPA" Anti-cybersquatting Consumer Protection Act, 15
U.S.C. 1125(d), Count III "Willful Violation of FERPA" Family Educational Rights and
Privacy Act, 20 U.S.C.1232(g), and Count IV "Defamation" of sixteen(16) statements
(Dkt 1, pg 9, no. 54: a-p). AUA's (Dkt 1, pg 12), included a sworn affidavit:

**"I Neal Simon, am an officer of the American University of Antigua and its,
general counsel. I have personal knowledge of the facts set forth in this complaint
and, having read the same, I hearby attest that each and every allegation contained
herein is true to the best of my knowledge, information and belief"**

The Court ruled Woodward is innocent by law of Counts I, II, III; and 9 out of 16 Count
IV Defamatory Statements. **Woodward is innocent of 90% of AUA's allegations,
evidence of the great lengths AUA will go to protect their reputation and cover-up
their corruption and lies (sworn under oath).** Woodward is being denied the defense
of seven(7) alleged defamation statements in the Permanent Injunction (Dkt 185).

2

Brief

Woodward request de novo review of this case by the U.S. Appellate Court.

Woodward believes the Permanent Injunction per Summary Judgment (Dkt 143) was wrongfully ruled upon for the following reasons:

1. AUA was barred from producing documentation or exhibits and failed to defend their case by refusing to produce discovery; prior to filing of Docket 143.

2. AUA claims should have been automatically dismissed for discovery rules violations, prior to filing Docket 143.

3. AUA claims should have been dismissed for violating discovery court orders, prior to filing Docket 143.

4. AUA used discovery rules as weapon.

5. AUA could not be prejudiced for discovery they refused on multiple occasions.

6. AUA lost "safe harbor" status and thereby committed perjury in their verified complaint and signed sworn affidavit testifying that their claims were true; knowing they were false.

7. Woodward had absolute consent from AUA.

8. Summary Judgment must be denied when there is the slightest doubt to the facts.

*[Arnstein v. Porter, 154 F.2d 464, 468, 2d Cir 1946]*

Woodward filed motions (Dkts 135 and 136) arguing discovery violations prior to AUA writing their motion for Summary Judgment (Dkt 143). Woodward believes the court acted with bias and aided the Plaintiff.

Woodward argues: AUA refused to produce discovery, refused to take served discovery, disobeyed court orders, violated federal rules, violated federal laws, lied to federal

3

judges, used motions as schemes to defraud, made false declarations before Michigan and the Federal courts, committed perjury, and filed frivolous claims and motions. Woodward argues judicial misconduct including: Orders that were impossible for Woodward to comply, false statements, bias and violations of Woodward's Rights of Due Process and First Amendment freedom of speech by Michigan and Federal judges.


**a)** AUA refused to produce discovery served by Woodward per FRCP 26, including Woodward's own student records and any medical records, violating Federal Law, Federal Rules, and AUA's own Student Handbook. Woodward served AUA discovery requests per FRCP 26 (Dkt 121, pg 3-26); FRCP 34 Request for Production of Documents, FRCP 36 Request for Admissions, and FRCP 33 Interrogatories. Discovery was served to AUA on **11/22/2010** and due **12/22/2010**. Discovery Closed **4/11/2011**, per Order (Dkt 94). AUA did not respond to Woodward's FRCP 34 requests until **11/11/2011 (with no production of documents)** (Dkt 212-2 pg 48-50 – 212-3 pg 1-17), a year after being served. AUA disobeyed Order (Dkt 124) and FRCP 34 requests. AUA is automatically barred from producing any documentation or exhibits to support their claims or damages per Federal Rules; AUA has no case. AUA's Motion for Summary Judgment (Dkt 143) violates FRCP 11(b)(1). Woodward demonstrates AUA failed to answer 89% of FRCP 36 Request for Admissions. AUA was allowed not to answer any FRCP 33 Interrogatory including those concerning Woodward's student records. Woodward will show evidence of bias by the court regarding discovery.

**1)** Woodward served AUA FRCP 34 Production of Documents (Dkt 121, pg 5) including **"18. Please produce a copy of all documentation identified by Plaintiff's Rule 26**

disclosure" and "**19. Please produce a copy of all exhibits or demonstrative aids which Plaintiff intends to rely upon at trial**".  Woodward's student records and any medical records comprised over **50%** of the FRCP 34 requests (of only 46 requests). Woodward attempted to obtain his own records after 11/11/2011 without success.  AUA violated Woodward per Federal Law (FERPA 20 U.S.C. 1232g), and AUA's Student Handbook:

(Dkt 188, pg 150) "**The student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access.**"

Woodward filed Motion to Compel (Dkt 121), **3/24/2011**

"**The <u>Plaintiff refuses to produce any of the requested documentation</u>, including the Defendant's, Steven Woodward, <u>own school records</u>**", "**The Defendant requests the Court order the Plaintiff to produce <u>all of the requested documentation, Answer Admissions, and the Interrogatories</u>, in not all <u>at least the required amount</u>.  The Defendant <u>requests the Court impose sanctions</u> against the Plaintiff due to burden, harassment, and annoyance.**"

Breach of Contract *[Mangla v. Brown Univ. 135 F.3d 80.83(1ˢᵗ Cir. 1998]* &

*[Ross v. Creighton University, 957 F.2d 410-Court of Appeals 7ᵗʰ Cir. 1992]*

**2)** The Court Ordered AUA to respond (Dkt 124); but AUA refused.

"**Plaintiff <u>must file a response to the original motion</u>, including a written brief, in accordance with Local Rule 7.1.  The deadline for plaintiff's response is April 11, 2011.  <u>Failure to file a response may result in sanctions</u>, including <u>granting all or part of the relief requested by the moving party</u>**"

**A)** AUA's filed response (Dkt 134), dated <u>4/11/2011,</u> fails to respond to Woodward's FRCP 34 Production of Documentation (discovery closed on <u>4/11/2011</u>).

**B)** AUA's disobedience to Order (Dkt 124) is proven by AUA's Response (Dkt 212-2, pg 48 thru Dkt 212-3 pg 1-17) dated **Nov 11, 2011, which was served 11/22/2010** (<u>a year after being served and seven(7) months after the close of discovery.</u>)

5

**3)** Order (Dkt 124) states "**including granting all or part of the relief requested by the moving party**"; sanctions per FRCP 37(b) (includes contempt), and FRCP 37(b)(2)(A)(i)-(vi) (dismissing claims and/or the case in whole). Woodward filed Dockets 135 and 136 for AUA's Bad Faith and violating Court Order (Dkt 124); arguing contempt and requested FRCP 37 Sanctions. Woodward requested adjournment for discovery (Dkts 127, 145, and 146), but was denied in Order (Dkt 174, pg 3)

**A)** The Court must, **but did not**, automatically sanction AUA

*[David v. Caterpillar, Inc. 324 F.3d 851(2003), No. 02-1354 US Court of Appeals, 7th Cir.]*

**B)** AUA is automatically barred from defending their claims or seeking damages after 4/11/2011 per FRCP 37(c)(1), per FRCP 26(a)(1)(A)(iv), and FRCP 34. FRCP 37(c)(1) "**the party is not allowed to use that information**", "**at a hearing , or at a trial**", **or motion.**

**C) AUA is without a case** as of **4/11/2011** prior to Docket 143.

*[Salgado v. Gen. Motors Corp, 150 F.3d 735, 742(7th Cir 1998)]*

**4)** AUA filed Motion for Summary Judgment (**Dkt 143**) on **4/29/2011**, after Woodward's motions (**Dkts 135 and 136**); after violating Order (124) and FRCP 34; and after close of discovery.

**A)** AUA violated Order (Dkt 124) until AUA's response **11/11/2011**. Minimal sanctions per FRCP 37(b)(2)(A)(iv); proceedings would be "**at stay**" (until 11/11/2011).

**B)** AUA's Motion for Summary Judgment (Dkt 143), and every other motion filed after 4/11/2011 violates FRCP 37 and FRCP 11(b)(1) for improper purpose, such as to harass.

<u>C)</u> At minimum AUA's Motion for Summary Judgment should have been denied per FRCP 11(c)(3), FRCP 34, FRCP 37, Order (Dkt 124) sanctions, and Woodward's motions (Dkt 135 and 136).

*[Cooter & Gell v. Hartmarx Corp., 496 US 384 Supreme Court 1990 R.D. 189, 191 (1988)]*

<u>5)</u> Court bias and misconduct is evident by comparing court orders.

<u>A)</u> Ordered (Dkt 174, pg 2, par. 2) **"As to defendant's motion for sanctions, the Court interprets it to be more of a <u>second motion to compel</u>"** and denial of adjournment;

<u>B)</u> Order (Dkt 124 ) **"Plaintiff must file a response to the original motion"**, **"Failure to file a response may result in sanctions"**; and Order (Dkt 186) **"<u>Moot</u>"** (Dkt 136);

<u>C)</u> Compared to Order (Dkt 115) **"defendant is ORDERED to provide <u>full and complete responses</u> to plaintiff's discovery requests within 14 day of entry of this Order."**

<u>D)</u> Woodward argues in Motion for Reconsideration (Dkt 188, pg 3, line 11)

> **"The Defendant requests Docket 186 "Order Terminating Motions as Moot (Dkt 136, 140, 141) be reconsidered upon ruling of this motion.  Order 186 combined with Order 185 would cause reason for the Defendant to believe the Court has allowed the Plaintiff's Summary Judgment without performing Discovery show material facts, allowing the Plaintiff to violate FR 37, FR 34, FR 36, FR 26 Federal Law 20 U.S.C. 1232g, breach of contract, and Civil Rights of Due Process, and acting with extreme Bias against Mr. Woodward."**

Woodward's Docket 188 was more than a Motion to Reconsider of Order (Dkt 185).

Docket 188 is a Motion to Reconsider Docket 186, a "Nondispositive Motion" LR 7.1(e)(2).  The Court did not hear Woodward's Motion to Reconsider Order 185 (Dkt 188) for LR 7.1(h)(2) per (Dkt 192).

7

**E)** Judge Duggan criticized Woodward for producing over 2,500 pages discovery during

the Aug. 11, 2011 hearing (Dkt 169, pg 25, line 12 – pg 26, line 5, pg 27, line 3)

(Dkt 169, pg 27, line 1) Woodward **"He didn't take any of it."** The Court **"Why should**

**he have to go through 2,500 pieces of paper?   That's terribly burdensome."**

> (Dkt 169, pg 27, line 8) Court **"You didn't answer my question.  It's not fair he**
> **wants one thing about another thing, the request for admissions and you hand him**
> **2,600 pages and say, "It's in there some place, you find it?"**

> Woodward **"That is not right.  That is not correct. No, it was in another manila**
> **envelope with my answers to interrogatories, it was completely separate."**

Woodward produced over 2,500 pages of FRCP 34 documentation (indexed, collated,

stapled, and cataloged) **free of charge** to AUA.  AUA produced nothing per FRCP 34.

**6)** AUA violated FRCP 36(a)(5) by bad faith objections to 62.5% (35 out of 56) (Motion

to Compel (Dkt 121, Ex. 4 pg 27-40)

**"Plaintiff objects to this request as irrelevant to the claim and defenses in this case**
**of whether Defendant defamed Plaintiff or violated Plaintiff's marks."**

**A)** Woodward argues AUA did not answer 89% (50 of 56) FRCP 36 Request for

Admission according to FRCP 36(a).

**B)** Woodward filed motions arguing AUA's violation of FRCP 36: Motion to Compel

(Dkt 121), Dockets: 135, 136, 178, and 188.  The Court would not hold a hearing

concerning these violations of FRCP 36, and ruled Woodward's complaints **"moot"** in

Court Order (Dkt186).

**C)** The Court allowed AUA Summary Judgment (Dkt 143) over answers of FRCP 36

Request for Admissions, but the Court would not hold a hearing for Woodward's claims

against AUA's FRCP 36 answers; which were filed prior to AUA's Motion for Summary

Judgment (Dkt 143)

Case: 12-1128    Document: 26    Filed: 06/04/2012    Page: 10

**7)** The Court ruled against Woodward's requests that AUA answer at least the minimum number of FRCP 33 Interrogatories (Dkt 121). Woodward requested AUA answer 54 Interrogatories, which would have included production of Woodward's student records. Inter.38 (Dkt 121, pg 14) **"State the reason AUA discontinued access to stevenw@auamed.net to Steven Woodward after December, 2007?"** and Inter. 40 **"Provide the username and password to the account stevenw@auamed.net."**

**8)** Woodward's requests for subpoenas were denied (Dkts 17, 18, 26, 110, 125, 130).

**9)** Woodward attended three depositions: 1/4/2011(AUA cancelled morning of), 2/1/2011(AUA walked out), and 3/24/2011. Woodward produced over 2,500 pages of FRCP 34 documentation (indexed, collated, stapled, and cataloged), answered FRPC 36 Request for Admissions, FRCP 33 Interrogatories, visual aids, exhibits, and text references.

By the close of discovery AUA produced <u>NOTHING</u> per FRCP 34, arguably only answered six(6) out of 56 FRCP 36 Request for Admissions, and did not answer any FRCP 33 Interrogatories.

**b)** AUA admits refusing to take discovery AUA demanded from Woodward.

AUA's Summary Judgment (Dkt 143) hinges on late responses of FRCP 36 Request for Admissions. Woodward argues; answers to AUA's FRCP 36 Request for Admissions were not late. Woodward argues it is impossible to prejudice AUA for discovery repeatedly refused. Woodward argues AUA refusal of discovery, is evidence of bad faith use of rules as a weapon. AUA deliberately refused discovery so they could write Motion for Sanctions (Dkt 141) and Motion for Summary Judgment (143) violating FRCP11(b)(1). Woodward will show AUA lied to Judge Duggan and Judge Hluchaniuk

about discovery. Woodward argues the court made false statements concerning Woodward's discovery. Prior to AUA FRCP 36 Request of Admissions Woodward admitted to (or similar) the seven(7) enjoined statements.

Prior to Docket 143 AUA filed a similar, bad faith, motion Docket 13, Request for Clerk's entry of Default. *[Perez v. Miami-Dade County, 297 F.3d 1255, US Court of Appeals, 11 Cir. July 17, 2002.] & [Cooter & Gell v. Hartmarx Corp., 496 US 384 Supreme Court 1990 R.D. 189, 191 (1988)]*

**1)** AUA admits to refusing personally served discovery from Woodward on Dec. 22, 2010 and Feb. 1, 2011; witnesses include Judge Hluchaniuk. Woodward had to have Judge Hluchaniuk intervene over discovery March 24, 2011.

**A)** AUA served Woodward requests for discovery on 11/8/2010, Motion to Compel (Dkt 76, 12/16/2010) demanding: Interrogatories (FRCP 33), Production of Documents (FRCP 34), answer Request for Admission (FRCP 36) and inspection of visual aids. AUA wrote Woodward an email, Nov. 2, 2010, (Dkt 57, pg 8) "your notice is "decus tecum" and requires you to produce the documents".

**B)** Woodward filed Motion for Protective Order (Dkt 56, **11/19/2010**) for discovery Protection. Docket 56 was scheduled and heard on **12/22/2010**; the Court Order (Dkt 88) deciding Docket 56 was filed on **1/05/2011**. Woodward's discovery would not be due until **Dec. 22, 2010** for "**on motion**" per Docket 56.

*[U.S. District Court Western District of Washington at Seattle, MCL 1407]*

**C)** Woodward notified AUA their discovery requests would be available 12/22/2010; depended Court ruling of Docket 56. Woodward's email dated **12/16/2010** at **12:15:52 PM** (Dkt 83, pg 8)

Case: 12-1128　　Document: 26　　Filed: 06/04/2012　　Page: 12

"**Depending on the Decisions and Order by the Honorable Judge Michael Hluchaniuk**: Please <u>schedule time</u> after the December 22nd Hearing to sign-for(verify receipt) <u>and receive</u> approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, <u>Request for Admissions</u>, and Request for Production.  What you receive will depend on the Order and Decision of the Court.  Please bring with you all documentation he Defendant has requested and the answers to: Defendant's Interrogatories to Plaintiff, Defendant's Request for Documentation and Defendant's Request for Admissions"**

**i)** AUA violated FRCP 37(a)(1) by filing Motion to Compel (Dkt 76) on **<u>12/16/2010</u>** at

**3:58 PM**; (three hours after Woodward's email) without conferring.

**ii)** Judge Hluchaniuk witnessed Woodward's production of all requested discovery and

attempted service to AUA during the <u>12/22/2010</u> hearing.

(Dkt 205, pg 41, line 14) Woodward "**This is all of my documentation that I would like him to sign for today.  He's seen it.  You're scheduled, I sent you an email concerning that, that today would be a good time for you to sign for this information**"

(Dkt 205, pg 45, line 12) Woodward "**<u>Any documents that he request</u>, <u>all his answers to his interrogatories</u>, <u>all of his answers for his admissions</u>, <u>all of his documentation is here.</u>**"

Mr. Buikema "**<u>It's there</u> but I didn't address it quite intentionally.  It's not before you today.**"

Judge Hluchaniul "**It's not scheduled for today.  <u>I'm just noting the existence of it.</u> And <u>Mr. Woodward is saying that he intends to comply with that today.</u>  Whether that's actually comes to pass is another issue, which we may address at a later time.  <u>But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion</u>**"

**iii)** AUA made excuses to avoid the discovery

(Dkt 205, pg 46) Mr. Buikema "**I, I just, I have a logistical issue with that today.**" and

"**We'll address that outside of the Court's presence**"

**iv)** Judge Hluchaniuk told Mr. Buikema and he agreed to take Woodward's discovery.

(Dkt 205, pg 46, line 4) Judge Hluchaniuk "**It's, it's certainly not unreasonable that you would be unable to inspect those documents today under the circumstances.**

11

**But if has documents for you to take with you, I would certainly encourage you to take those and then assess the completeness of that production as soon as you possibly can.**"

Mr. Buikema: "**I will**". (Mr. Buikema left without inspecting or taking anything.)

**D)** Mr. Buikema refused discovery during the Feb. 1, 2011 deposition. During the

2/1/2011 deposition; Woodward called Judge Hluchaniuk (Dkt 170, pg 84)

> Woodward "**I brought every single thing that I was suppose to bring to the best of my knowledge again I have over 2,600 pieces of paper here this is the documentation that Mr. Buikema did not take during our last hearing.**"

Mr. Buikema's refusing discovery, **2/1/2011** (Dkt 170, pg 88, line 15)

> Woodward "**Do you want to witness the visual aids at this time while you are here it'll take two minutes.**", "**I'd like it on anyway my recording Mr. Buikema is now leaving refusing again to view, ah, visual aids.**"

> (Dkt 170, page 89), Woodward "**He didn't take his answers to his Interrogatories either**",

> Cheri Gleyre (Stenographer) "**That wasn't marked was it? He didn't mark it as an exhibit**", Woodward "**He didn't want it again, OK**"

**E)** On Aug. 11, 2011 Mr. Buikema admits to refusing discovery on two separate

occasions, Dec. 22, 2010 and Feb. 1, 2011.

> **i)** (Dkt 169, pg 24, line 23) Mr. Buikema "**But it's true, I'll stipulate, for the record, that I left the hearing without accepting the banker's boxes that Mr. Woodward brought to that hearing**"

> **ii)** (Dkt 169 ,page 24, line 9) Mr. Buikema "**Yes, I refused to accept documents in lieu**

of an answer of my question, is what he's referring to, I believe"

**iii)** On March 24, 2011 Woodward had to engage Judge Hluchaniuk (JH) had to intervene

on these discovery violations by AUA.

> (Dkt 170, pg 91, line 5) Woodward (SW) "**I think this has been very bias. The attitude, I've brought this evidence and they have refused to look at it during your hearing and during the last deposition.**"

Case: 12-1128    Document: 26    Filed: 06/04/2012    Page: 13

Case: 12-1128    Document: 26    Filed: 06/04/2012    Page: 14

JH **"They don't have to look at it, you have to make it available to them and if they elect not to look at it, <u>then you've satisfied your obligation by making it available.</u>"**

SW **"<u>So I'm finished with my court order of... you ordered?</u>"**  Order (Dkt 115)

JH **"<u>What, what you need to do to document the fact that you've made it available is to identify in some list the items that you have presented to them and made available to them so that it's clear what, what, what they had the opportunity to see, if they elect not to look at it that's their problem not yours</u>"**

(Dkt 170, pg 92, line 14) JH **"Well, it's <u>my belief that if you make those documents available and that as long as it's clear, so that if there is a contest over this in the future we can determine what it was that was made available to them, the obligation of a party in discovery as far as I'm concerned is to, you can produce copies, or simply make copies available, and um, if he brought documents for the inspection for the opposing counsel and the opposing counsel chooses not to look at it then he's satisfied his obligations as far as I'm concerned.</u>"**

(Dkt 170, pg 94, line 12) Judge Hluchaniuk **"<u>I told you Mr. Woodward you have satisfied your obligation if you've made documents available that they are seeking and if they elect not to take them you're still your obligation has been satisfied</u>"**

Per Judge Hluchaniuk's, Woodward satisfied all obligations to produce AUA discovery on Dec. 22, 2010; including answering FRCP 36 Request for Admissions.

**2)** Court Order (Dkt 115, filed on 3/15/2011) states:

**"<u>Plaintiff has filed a motion to compel defendant to answer certain written discovery requests that have, apparently, gone unanswered. (Dkt 76)</u>", "Based on the foregoing, <u>defendant is ORDERED to provide full and complete responses to plaintiff's discovery requests within 14 days of entry of this Order</u>"**

It was impossible for Woodward to comply with Order (115) because AUA deliberately refused to accept and assess the discovery.  AUA's refusal of discovery, Motion to Compel (Dkt 76), Order (Dkt 115), Motion for Sanctions (Dkt 141), Summary Judgment (Dkt 143) is evidence of a scheme.  Woodward argues AUA committed *"Fraud on the Court"*, violated, FRCP 11(b)(1), FRCP 26(g)(1)(B)(ii), FRCP 37(a)(1), using discovery as a weapon, a scheme, with malice of FRCP 37 sanction (including contempt) and to harass and burden Woodward.

13

Case: 12-1128    Document: 26    Filed: 06/04/2012    Page: 15

*[Bulloch v. US, 763 F.2d 1115, 1121 (10th Cir. 1985)], [Cooter & Gell v. Hartmarx Corp., 496 US 384 Supreme Court 1990 R.D. 189, 191 (1988)] & [Perez v. Miami-Dade County, 297 F.3d 1255, US Court of Appeals, 11 Cir. July 17, 2002.]*

**3)** Admitting refusal of discovery, Mr. Buikema admits to lying to Federal Court Judges.

**A)** Mr. Buikema lied to Judge Hluchaniuk at least twice: **"I will"** take discovery, and **"assess completeness of that production"**.  Mr. Buikema refused discovery to deliberately initiate Court Oder (Dkt 115) **"apparently, gone unanswered"**, Motion for Summary Judgment (Dkt 143), and Motion for Sanctions (Dkt 141).

**B)** Mr. Buikema lied to Federal Judge Duggan in Motion for Summary Judgment (Dkt 143).   Docket 143, page 1, No. 2 **"Defendant failed to answer requests for admissions and has conceded liability"** an obvious false and deceiving statement.  During the Aug. 11, 2011 hearing (Dkt 169, pg 28, line5) Judge Duggan states: **"Counsel, are you saying you've never seen a response to the request for admissions?"** AUA:" **We have now"**.

*[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010]*

**4)** Judge Duggan and Judge Hluchaniuk were aware AUA refused discovery.

**A)** Judge Hluchaniuk was aware AUA refused discovery during the 2/1/2011 deposition prior to writing Court Order (Dkt 115, dated 3/15/2011).

**B)** AUA admitted to Judge Duggan they refused discovery on Dec. 22, 2010 during the Aug. 11, 2011 hearing; prior to writing Court Opinion (Dkt 184, pg 4, par. 2)

> **"Woodward did not timely answer; however, he apparently served late responses to AUA's requests "at his reconvened deposition" which the Court gleans to have been in <u>March 2011</u>."**

This is a false and misleading statement.  There is no mention of AUA's admitted refusal of discovery on Dec. 22, 2010 and Feb. 1, 2011.

14

**C)** Court Order (Dkt 184, pg 22, par. 2) states:

> **"This Court believes that allowing Woodward to withdraw his admissions would not promote the presentation of the merits of the action and would <u>prejudice AUA</u>."**

Woodward argues there **cannot** be prejudice when AUA refuses the discovery.

*[Hadley v. US 45 F.3d 1345 Court of Appeals, 9th Cir 1995]*

Woodward argues answers to AUA's FRCP 36 Request for Admissions were not late due "<u>on motion</u>" Motion for Protective Order" (Dkt 56).

**5)** Prior to AUA's FRCP 36 requests; Woodward admitted to (or similar to) each of the seven(7) enjoined statements. This is described in Docket 188, pg 5-7, sec. (b).

**c)** Woodward's evidence of judicial misconduct (other than shown elsewhere) *"Fraud on the court" [Bulloch v. US, 763 F.2d 1115, 1121 (10th Cir. 1985)]*

**1)** Docket 1, pg 6; "**Count I – Federal <u>Trademark</u>/Tradename Infringement**" and

(Dkt 1, pg 3) "**13. As a result of his dismissal from the University, Defendant initiated a lawsuit against AUA and its education partner hospital <u>Trinity-Health Michigan's St. Joseph Mercy Hospital</u>**".

Woodward's case (Dkt 212-2, pgs 31-44) State of Michigan Court of Appeals No. 292172 (per Oakland Cir. Court LC No. 2007-088103-CZ) was dated January 13, 2011.

**2)** Per the Courts advice (Dkt 205, pg 2, line 12), Woodward requested a Pro Bono attorney to aid in discovery (Dkt 85, **12/27/10**), which was granted, attorney to be appointed within 90 days (Dkt 89, **1/5/11**). The court assigned counsel on **7/15/11** (seven months after the request and over 90 days after the close of discovery, 4/11/2011). Woodward filed Docket 162 to release counsel due to "**<u>conflict of interests</u>**". **The Court assigned Mr. Woodward counsel that represents AUA's business partner St Joseph**

**Mercy Oakland Hospital (Trinity Health)** in <u>Trademark Law,</u> named in Docket 1.

Mr. Taggart wrote Woodward an email on 7/19/11, (Dkt 211, pg 30)

> **"Thank you as well for your <u>time today in meeting with us</u>."** and **"<u>Our firm represents Trinity in trademark matters, and we cannot and will not do anything adverse to their legal interests.</u>"**

**3)** The Court scheduled 8/11/2011 hearing, (Dkt 169, pg 4-11) where Judge Duggan tried to intimidate and bully Woodward into accepting Mr. Taggart. Obviously, Mr. Taggart was assigned to Woodward to gain control of the case and to further attempt to depose Woodward in a guise of attorney privilege; violating FRCP 30(d)(1). **Each enjoined statement in Order (Dkt 185) relates to SJMO Hospital, Trinity Health.** Judge Duggan wrote Order (Dkt 164, filed 08/12/11,) **"IT IS FURTHER ORDERED that the defendant retain new counsel within 45 days"**. Judge Duggan knew Woodward could not financially comply with Order (Dkt 164). Judge Duggan wrote Order (Dkt 164), to trap Woodward in contempt. Court Opinion (Dkt 184, pg 5 line 6) **"for reasons not relevant to the pending motion, Woodward asked the Court to withdraw the assignment"**. Woodward argues this is a false statement since the Pro Bono attorney worked for AUA's business partner SJMO and the enjoined statements are directly tied to both parties.

**4)** More evidence of court bias is scheduling a hearing to dismiss a Pro Bono attorney; but not scheduling hearings for Woodward's motions concerning perjury or contempt (Motion Dockets for perjury 16, 27, 51, 193, 182, 198 and Dockets 135, 136, 178, and 188 for contempt).

**d)** AUA filed frivolous claims in Docket 1. The court has obligation to sanction per FRCP 11(c)(3) this behavior. AUA loses "safe harbor" status due to frivolous claims.

Case: 12-1128    Document: 26    Filed: 06/04/2012    Page: 18

*[Eastway Const. v. City of New York, 762 F.2d 243 Court of Appeals 2nd Cir. 1985]*

AUA's own claims prove the enjoined statements are <u>true</u> and Woodward is innocent of defamation. <u>Woodward is innocent of 90% of AUA's claims;</u> Counts I-III by Law, and nine(9) of sixteen(16) of Count IV. Woodward is being denied defense of seven(7) statements. Judge Duggan's Opinions, Orders (Dkt 184 and 185), ruling contradict enjoined statements:

1. AUA routinely commits fraud upon its students
2. AUA falsifies its students' grades
3. AUA breaches contracts
4. AUA conspires to commit fraud and violations of civil rights
5. AUA commits criminal activity reportable to the FBI
6. AUA colluded with St. Joseph Hospital to maliciously end[Woodward's] career
7. AUA committed perjury.

Judge Duggan altered Order (Dkt 185) (Dkt 199, pg 12, line 19) Jan. 18, 2012 to include "**<u>Everything related to</u>**". (Dkt 199, pg 32, line 9) "**In <u>essence</u>, did you <u>allege</u> that**". Woodward filed motions (Dkt 189 and 190) to clarify Order (Dkt 185); the Court did not answer prior to Jan. 18, 2012, instead wrongfully put Woodward in contempt.

**<u>1)</u>** Woodward argues the Court was bound, per FRCP 11(c)(3), to sanction AUA during the first hearing on April 19, 2010 and proven in Court Orders (Dkt 185). Judge Duggan proved how frivolous AUA's allegations were; violating FRCP 11(b)(1-4). AUA burdened and harassed Woodward defending frivolous claims in motions including AUA's Motion for Summary Judgment (Dkt 143). Woodward was blamed for AUA's own, admitted, violations of Federal Law, AUA's Student Handbook is a contract, and with intent to defraud Federal Financial Institutions. AUA's own motions, statements, documentation, exhibits, and Judge Duggan's Opinions and Orders contradict the permanent enjoined statements (Dkt 185).

17

**A)** The first hearing, April 19, 2010, Judge Duggan proved how frivolous AUA's

allegations were:

**i)** Counts I and II, Lanham act, (Dkt 19, page 7, line 6) "We're going to go to each one of

your theories because I'm trying to figure out why you're asserting these theories because

**it doesn't seem to me your Lanham Act has any merit at all.**"

**ii)** Count III FERPA (Dkt 19, page 14, line 24)

The Court "**It's just <u>ridiculous</u>. I don't know why you're arguing that. <u>His conduct</u>
<u>can't be considered a policy or practice of the University</u>. <u>You said that from the</u>
<u>very beginning, it's not. I don't know why you're arguing these claims that have</u>
<u>very little, if any merit</u>**",

(Dkt 19, pg 15, line 11)The Court "**And it's just a bad practice, in my judgment, to
assert any claim unless you have solid evidence that there's at least some good
merit to it and <u>I don't think there's any merit to this claim at all</u>**"

(Dkt 19, pg 15, line 24)The Court "**<u>It's not tortuous interference</u>**"

**iii)** Opinion and Order (Dkts 184 & 185) proved AUA claims are frivolous, **by Law**.

Neal Simon is an attorney and President of a University; obviously he knew AUA's

claims were lies, sworn under oath in both a verified complaint and sworn affidavit; filed

in bad faith. There is no "safe harbor" for bad faith, resulting in perjury.

*[Cooter & Gell v. Hartmarx Corp., 496 US 384 Supreme Court 1990 R.D. 189, 191*

*(1988)], [Eastway Const. v. City of New York, 762 F.2d 243 Court of Appeals 2nd Cir.*

*1985] &[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir.*

*2010]*

**B)** It is uncontested FERPA violations of private student information occurred, (shown in

Dkt 11 pgs 6-12) and Woodward is innocent by Law (Dkt 185). Pure logic deduces AUA

disclosed student records.

**i)** AUA states in their Student Handbook (Dkt 212-3, pg 18) **"The rules and regulations outlined here <u>are binding</u>"** (Dkt 212-3 pg 20) **"The University adheres to the mandates of the United States Family Educational Rights and Privacy Act(FERPA)."** AUA admits contractual relationship (Dkt 19, pg 15, line 22) **"FERPA is a tortious interference"** against Woodward.

*[Mangla v. Brown Univ. 135 F.3d 80.83(1st Cir. 1998] & [Ross v. Creighton University, 957 F.2d 410-Court of Appeals 7th Cir. 1992*

**ii)** AUA's admits (Dkt 1, pg 9, No. 49.) **"Privacy Rights"** and "The academic records are otherwise private and are protected from public disclosure under **federal law**."

**iii)** AUA's claims (Dkt 1, pg9, No. 51.) "<u>AUA could lose significant access to federal educational funding and student aid</u>" is evidence of AUA's motive to commit fraud.

**2)** Judge Duggan's Opinions and Orders contradict each other.

**A)** Woodward can **by Law** publish the Student Records AUA disclosed, but in doing so Woodward violates enjoined statements AUA breaches contracts, agents are liars, committed perjury; this is a tactical paradox the Court used against Woodward.

**B)** Defamation claim (Dkt 1, page 10), **"o. AUA agents are liars"** is TRUE by pure logic; Neal Simon's sworn affidavit and verified complaint **"that each and every allegation contained herein is true"** is a lie. Alleging "<u>**AUA committed perjury**</u>".

*[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010] & [Eastway Const. v. City of New York, 762 F.2d 243 Court of Appeals 2nd Cir. 1985]*

**C)** AUA lies and violates (disregard for federal laws), Student Rights (20 USC 1011a(a)(1) and Student Safety( Clery Act 20 USC 1092(f) to protect AUA's reputation for profits in trade for student safety.

19

**i)** Count IV Defamation, (Dkt 1, page 10) claim letter "**h. AUA students are sexually assaulted**". AUA's Docket 8, Exhibit C, states "**AUA student sexually assaulted!**" from Woodward's Website.

**ii)** AUA admitted Woodward's statement was TRUE, (Dkt 19, pg 19, line 6) "**In and of itself, an AUA student was apparently assaulted.**" AUA tried to argue the "**Tense**" of the statement (Dkt 19, page 19, line 14). Judge Duggan stated (Dkt 19, page 19, line 19) "**That's the spin you put on it. But the statement itself is true, "AUA students are sexually assaulted", have they?**" AUA verified and admitted (Dkt 19, page 19, line 22) "**An AUA student was sexually assaulted.**" Alleging "**AUA committed perjury**". *[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010] & [Eastway Const. v. City of New York, 762 F.2d 243 Court of Appeals 2nd Cir. 1985]*

**D)** AUA lied in Count IV Defamation, (Dkt 1, page 10) claim letter "**l. AUA student pass rate for USMLE medical board exams is only 22.9%**" AUA's own Docket 8, Exhibit C, states "**Antigua only has a 22.9% USMLE Pass Rate!**" from Woodward's Website.

**i)** Woodward defends this on April 19, 2010 (Dkt 19, page 29, line 13)

**"When is says, "AUA student rate for USMLE medical board is only 22.9% percent", that is not what my website says and I have evidence to show that. What it is, it's Antigua does. And it's published information. There's two medical schools on Antigua." (Dkt 19, page 31, line 5) "Because there are two schools on the Island of Antigua, one has a 90% USMLE pass rate for first time test-taking students; another one claims that they have an 80.6% pass rate. 80.6 and 90% doesn't equal 22.9%." (Dkt 19, page 32, line 5) "data that was released in a Power Point presentation from the school showed that the University only had about a 50 percent pass rate." (Dkt 19, page 32, line 16) "Because it demonstrates, Your Honor, that somebody's not telling the truth."**

**ii)** AUA documentation, (Dkt 17, pg 18) is evidence that AUA's United States Medical Licensing Examination, USMLE pass rate is about 50%, not 80.6%; alleging "**Fraud**".

20

**iii)** Woodward begs the U.S. Court of Appeals subpoena the ECFMG per (Dkts 17 and 125) for the truth of AUA's USMLE pass rates. *[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010] & [Eastway Const. v. City of New York, 762 F.2d 243 Court of Appeals 2nd Cir. 1985]*

**E)** Judge Duggan made false statements in his Opinion (Dkt 184) about perjury in AUA's Docket 1 claims. Judge Duggan allowed AUA to produce documentation and exhibits during a hearing knowing AUA was barred from doing so.

**i)** Judge Duggan's false statement in Opinion (Dkt 184, pg 23) "Woodward **no longer** states". Woodward **Never** made AUA's alleged statements about <u>USMLE pass rates</u> or that more than <u>a single AUA student was sexually assaulted</u>.

**ii)** Judge Duggan jailed Woodward for defending false statements made by the Court (Dkt 184, pg 23, line 5 and 8) in order to protect AUA (Dkt 199, pg 20, line 22)

> Woodward: **""No longer", I've never said that, sir. I never said that statement and you knew it day one. You knew that blatant perjury by this son of a bitch Neil Simon and his affidavit –"**

Woodward has never been handcuffed, shackled, or imprisoned prior to Jan. 18, 2012.

**iii)** Judge Duggan told AUA to produce documentation; violating FRCP 26 and FRCP 37(c)(1); Jan. 18, 2012 hearing (Dkt 199, pg 22, line 21)

> Court **"Then at that time I want you to be prepared to quickly go and identify each of these statements on the website so I can see it, he can see it, and he can indicate it either is or is not there. "**

> AUA **"I'm happy to do that. In fact, we have some exhibits that might be helpful to you, do you want me to delay those until two o'clock?"**

> Court **"Why don't you furnish those to him and the Court before you started."**

21

**iv)** Woodward obviously traumatized; being jailed, handcuffed, shackled, surrounded by U.S. Marshals; was demanded, **to view for the first time**, exhibits AUA refused to produce prior to the Jan. 18, 2012 hearing, violating any form of Due Process.

**v)** Woodward questioned the court concerning the FRCP 37 violations (Dkt 199, pg 25 line 20 – pg 26 line 8) Court **"Probably, I don't know, every case is different. Maybe they have an explanation, I don't know. The rule says what it says"** the Court demanded Woodward continued to answer questions about AUA's exhibits and documentation.

**e)** Judge Duggan's Opinions (Dkt 184) conflict with Orders (Dkt 185) conflict with facts; which resulted in wrongfully holding Woodward in contempt. The court created a paradoxical trap to condemn Woodward to contempt. Woodward is innocent and can publish information concerning AUA's disclosure of FERPA protected student records; but in doing so Woodward is guilty of contempt because those student records allege violations of the enjoined statements Order (Docket 185). Woodward tried to clarify the paradoxical trap in Dockets 189 and Docket 190, the court did not reply prior to the Jan. 18, 2012 hearing.

**1)** Woodward defended this claim April, 19, 2010 (Dkt 19, pg 34, line 7)" **I earned an 80 percent on my final grade and AUA gave me an "F"**; (Dkt 10, pg 9, line 21), and (Dkt 27, pgs 11-14). The 5th Semester Course Syllabus (Dkt 27, pg 43) "Evaluation and Grading" and (Docket 27, pg 44) "Components included in Grade Calculations". The 5th Semester Final Grades, "**Table 1**" (Dkt 11, pg 6).

**Final Grades by Component - Fall, 2007**

| | Code | Attendance 10% | | Prac Session 5% | | Outpatient E 5% | | Verbal Pres 5% | | Portfolio 10% | | Quizzes 35% | | Written Ex 20% | | | Practical Ex 10% | | Final | Final Grade Adjusted | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Score | PT | Score | PT | Score | PT | Score | PT | Score | PT | Scor | PT | Score | Curve | PT | Score | PT | | | |
| 1 | Hampel, Nicola | 92 | 9.2 | 92 | 4.6 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 54 | 18.9 | 77 | 81 | 16.2 | 95 | 9.5 | 78 | C | |
| 2 | Jayadeep, Simbia | 100 | 10.0 | 100 | 5.0 | 80 | 4.0 | 100 | 5.0 | 100 | 10.0 | 57 | 20.1 | 80 | 84 | 16.8 | 95 | 9.5 | 79 | C | |
| 3 | Ozuomba, Michael | 100 | 10.0 | 100 | 5.0 | 83 | 4.2 | 100 | 5.0 | 100 | 10.0 | 56 | 19.6 | 70 | 74 | 14.8 | 90 | 8.0 | 77 | F | |
| 4 | Chheda, Vishal | 75 | 7.5 | 75 | 3.8 | 86 | 4.3 | 100 | 5.0 | 100 | 10.0 | 62 | 21.7 | 86 | 90 | 18.0 | 75 | 7.5 | 76 | C | |
| 5 | Bulat, Elizabeth | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 5.0 | 100 | 10.0 | 70 | 24.4 | 84 | 88 | 17.6 | 85 | 8.5 | 83 | B | |
| 6 | Evans, Lekedra | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 5.0 | 100 | 10.0 | 65 | 22.6 | 73 | 77 | 15.4 | 85 | 8.5 | 83 | C(-) | (1) |
| 7 | Woodward, Steve | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 5.0 | 100 | 10.0 | 70 | 24.4 | 71 | 75 | 15.0 | 80 | 8.0 | 83 | F | (3) |
| 8 | Paras, Chahal | 100 | 10.0 | 100 | 5.0 | 92 | 4.6 | 100 | 5.0 | 100 | 10.0 | 58 | 20.4 | 79 | 83 | 16.6 | 80 | 8.0 | 81 | B | |
| 9 | Hamed, Mousa | 100 | 10.0 | 100 | 5.0 | | 0.0 | 100 | 5.0 | 100 | 10.0 | 70 | 24.4 | | 92 | 18.4 | 93 | 9.3 | 82 | B | |
| 10 | Kristen, Nico | 100 | 10.0 | 100 | 5.0 | | 0.0 | 100 | 5.0 | 100 | 10.0 | 68 | 23.9 | 78 | 82 | 16.4 | 80 | 8.0 | 83 | B | (4) |

(1) Failed Final Exam. Remedial score 78. Final Grade: C(-)
Failed Final Exam. Has not taken remedial
(3) Failed Final Exam. Did take remedial and failed
Did not have OP rotation. Toal score / 95
(4) Did not take OP rotation. Total Score / 95

## Table 1

**A)** "**Circled**" student scores, in Table 1, failed per the Syllabus (7 of 10 students).

**B)** AUA promised all students a 10% curve (Dkt 27-1, pg 4) for the "Written Ex".

Without notice, AUA changed the curve from 10% to 4% (5% for Hamed, student 9).

"**Squared**" student scores, in Table 1, required a curve to pass the final exam (6 of 10).

AUA defrauded every student by assigning a 4% curve instead of the promised 10%.

**Alleging a breach of contract** *[Mangla v. Brown Univ. 135 F.3d 80.83(1st Cir. 1998]&*

*[Ross v. Creighton University, 957 F.2d 410-Court of Appeals 7th Cir. 1992]*

**C)** Per syllabus rules, 90% (9 of 10) of the students failed the 5th Semester.

```
Student #: Summation of PT scores      = Actual  -Final, Grade, +4%, +10%
 1: 9.2+4.6+5.0+5.0+10.0+18.9+16.2+9.5= 78.4    78      C       81      87
 2:10.0+5.0+4.0+5.0+10.0+20.1+16.8+9.5=80.4     79      C       84      90
 3:10.0+5.0+4.2+5.0+10.0+19.6+14.8+8.0=76.6     77      F       74      80
 4:7.5+3.8+4.3+5.0+10.0+21.7+18.0+7.5= 77.8     76      C       90      96
 5:10.0+5.0+4.8+5.0+10.0+24.4+17.6+8.5=85.3     83      B       88      94
 6:10.0+5.0+4.8+5.0+10.0+22.6+15.4+8.5=81.3     83      C(-)    77      83
 7:10.0+5.0+4.8+5.0+10.0+21.6+15.0+8.0=79.4     80      F       75      81
 8:10.0+5.0+4.6+5.0+10.0+20.4+16.6+8.0=79.6     81      B       83      89
 9:10.0+5.0+0.0+5.0+10.0+24.4+18.4+9.3=82.1     82      B       92      97
10:10.0+5.0+0.0+5.0+10.0+23.9+16.4+8.0=78.3     83      B       82      88
```

**D)** Woodward can legally publish Table 1, but in doing so he is in contempt due to the paradoxical trap Judge Duggan created. The scores **allege** AUA **Falsifies its students**

23

grades; routinely commits fraud; breaches contracts; conspires to commit fraud; violate civil right(discrimination); commit crimes reportable to the FBI; colluded with SJMO to maliciously end[Woodward's] career; and committed perjury.

**i)** The actual score for Student 10 is "**78.3**".  AUA assigned Student 10 an "**83**" and "**B**".

**ii)** Student 10 earned a lower score, but received higher grades than Students: 1(C), 2(C), 6(C-), and 7(F).

**iii)** Student 6 earned a higher score "**81.3**," but received a lower grade "**C(-)**", than Students:1(C), 2(C), 4(C), 8(B), or 10(B),

**iv)** Student 2's actual score was "**80.4**" not "**79**" or "**C**".

**v)** AUA wrongfully **failed** Mr. Woodward(7) who earned an actual overall score higher than Student: 1(C), 4(C), 10(B).

**vi)** Student 6 earned a **77%** (with the 4% curve) written exam score; failing to meet the 80% requirement, but received a "**C(-)**" passing score.  AUA failed Woodward with a 75%. (Dkt 11, pg 6 ) because Woodward filed lawsuit against AUA on (Dkt 27-1, pg 6) 12/20/2007 before the grades were released (Dkt 27-1, pg 9).

**E)** Note (3) "**Failed Final Exam.  Did take remedial and failed**" (Dkt 11, pg 6) added to Mr. Woodward's Grades is proof of FALSIFYING STUDENT GRADES.

**i)** Woodward retook the "Vocabulary" section only, because AUA's testing software did not work "**testing irregularities**" (Dkt 27-1, pg 4).

**ii)** Woodward earned an 88% (88 out of 100) on the "Vocabulary" test, which **is not** "failing" (Dkt 27-1, pg 5).

**iii)** Woodward passed the Final Exam per Dr. Yanez's (Program Director) own calculations "560 out of 800" (Dkt 27-1 pg 4); Woodward earned "568 out of 800" (Dkt 27-1 pg 5); which confirms Woodward **passed the Final Exam**.

**iv)** AUA appeals process does not work since AUA's committee meetings and grading are deliberate schemes to defraud. Woodward tried to appeal to AUA before.

**v)** It is impossible to determine Woodward's GPA at AUA, since AUA cheats.

**F)** AUA purposefully falsified the Final Grades to fail Woodward due to his Lawsuit against AUA, SJMO Hospital and Susan Zonia, on **Dec, 20, 2007 6:22 PM** (Dkt 27-1, pg 6), demonstrating malice.  Grades were posted on Jan. 6, 2008 (Dkt 27-1, pg 9).

**i)**  AUA, et al made blatant False Declarations (including perjury) before Oakland County Court case no. 07-088103-CZ records (Dkt 27, pg 20)**"Woodward took and failed the fifth semester Final Exam"**. **"Woodward received an "F" for the fifth semester"** (Dkt 27, pg 26) **"Woodard failed the fifth semester course"**,(Dkt 27, pg 18) **" having failed three courses and accumulated a 1.83(out of 4.0) GPA"** (Dkt 56, pg 9) "Plaintiff **"washed out"** of the fifth semester".

**ii)** Michigan Court of Appeals Order No. 292172 Oakland Circuit Court LC No. 2007-088103-CZ (Docket 212-2, pg 40,line 5) **"Woodward's academic performance was also tenuous, as he maintained only a 1.5 grade-point average"**

**iii)** AUA Motion for Summary Judgment (Dkt 143, pg 8, "Statement of Facts" line 2)

   **"Defendant is a former student who, due to his lack of professionalism and poor grades flunked out of AUA"**

   *[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010]*

25

**G)** AUA Falsifies Student Grades.  Woodward was held in contempt by Judge

Duggan.(Dkt 199, pg 11, line 12; thru pg 12, line 25) over this paradoxical trap against

Woodward.  Woodward asked for clarification in motions (Dkt 189 and 190).

**f)** Judge Duggan's Opinions (Dkt 184) conflict with Order (Dkt 185) conflict with facts;

which resulted in wrongfully holding Woodward in contempt.  The court created a

paradoxical trap to condemn Woodward to contempt.  The facts **allege** AUA: Falsifies its

students grades; routinely commits fraud; breaches contracts; conspires to commit fraud;

violate civil right(discrimination); commit crimes reportable to the FBI; colluded with

SJMO to maliciously end[Woodward's] career; and committed perjury.

**1)** Neal Simon signed the contract between AUA & SJMO hospital (Dkt 27, pg 28)

guaranteeing student rotations.

> **"The Hospital clerkship program will include rotations in Internal Medicine,
> Surgery, Family Medicine, Pediatrics, and Obstetrics and Gynecology and
> electives"**

this was confirmed and documented in the SJMO, 5th Semester Course Syllabus (Dkt 27,

pg 37).  The **"Schedule of Clinical Rotations"** (Dkt 27-1, pg 18) clearly shows AUA

scheduled three(3) (50%) rotations; Woodward only received two(2) Clinical Rotations

(Dkt 27-1, pg 19) because of scheduling.   The SJMO 5th Semester Course cost

(~)$12,000/student. AUA lies and **defrauded students out 66% of the educational**

**goals and tuition**. *Breach of contract [Ross v. Creighton University, 957 F.2d 410-Court*

*of Appeals 7th Cir. 1992] & [Mangla v. Brown Univ. 135 F.3d 80.83(1st Cir. 1998]*

**2)** AUA students use Shelf Exams to pass courses and to prepare students for the

USMLE.  AUA publishes advertisement in videos (Dkt 170, pg 108), AUA's Web site

(Dkt 27, pg 46 and 48), and course documentation (Dkt 27-1, pg 2) use of Shelf Exams.

Each student paid for testing AUA did not offer (Dkt 27-1, pg 3). There is no score

Woodward's Semester Grades for "Shelf" (Dkt 27-1, pg 9). AUA lied, broke a contract,

and defrauded to each student in the SJMO 5th Semester.

*[Ross v. Creighton University, 957 F.2d 410-Court of Appeals 7th Cir. 1992] & [Mangla*

*v. Brown Univ. 135 F.3d 80.83(1st Cir. 1998]*

**3)** The AUA Student Handbook states (Dkt 188, pg 149, par 7), "**The student has the**

**right to counsel**" AUA's (Docket 212-1 pg 1, par 3, line 3) "Notice of Grievance

Committee hearing" states "no recording devices, **no legal council**". AUA lies about

Grievance proceedings, Due Process, and breach of contract. *[Ross v. Creighton*

*University, 957 F.2d 410-Court of Appeals 7th Cir. 1992] & [Mangla v. Brown Univ. 135*

*F.3d 80.83(1st Cir. 1998]*

**4)** AUA Faculty Grievance Committee Chair, William A. Cain, PhD wrote Woodward

"Notice of Grievance Committee hearing" (Dkt 212-1, pg 1) "**According to Dr. Zonia's**

**memo**"(The "memo" being Dkt 212-1 pg 2). Publishing "memo" **alleges** AUA lies,

commits fraud, violates Civil Rights, and colluded with St. Joseph Hospital to

maliciously end [Woodward's] career. The emails between Susan Zonia, William Cain,

and Calderone, AUA Dean (Dkt 212-1, pg 4) clearly reads

> "**Please read this note from Dr. Cain. You need to write a request to start a**
> **Grievance procedure. If you would like, you could say that** "**according to**
> **instructions from VH and myself…. That way you would not have this person in**
> **your Office complaining**"

These facts **allege** AUA violates Due Process or fairness guaranteed by 20 USC

1011a(a)(2)(E) or implied when the Grievance Committee Chair, AUA Dean, and SJMO

Dir. Of Medical Ed. conspire to write lies in the "memo". Susan Zonia's "qualified

privilege" as asserted in , OCC (Dkt 212-2, pg 36) and MCA (Dkt 212-2, pg 43, par 3) is lost by knowingly making false statements, reckless and disregard of the truth Zonia loses qualified privilege. *[Havlik v. Johnson & Wales Univ. 509 F.3d 25 (2007)]*

**5)** Court Orders contain false statements and conflict with documented facts.  Oakland County Circuit Court Case, OCC, No. 07-088103-CZ states "**Unprofessional**" behavior (Dkt 212-2, pg 33) and Michigan Court of Appeals, MCA, No.  292172 (Dkt 212-2, pg 39, par.3) "**Mr. Woodward's lack of professionalism**".  Woodward's 5th Semester Evaluations for "**Professionalism**" were "**95**" (Dkt 27-1, pg 10) and "**90**" (Dkt 27-1, pg 12) equating to "**OUTSTANDING**". Dr. Breitenbach even wrote "**Excellent Student**" under "General observations on the student's performance" (Dkt 27-1 pg 11).  Dr. Malloy and Dr. Breitenbach were in charge of clinical instruction for Woodward, Monday – Thrusday, not Susan Zonia or Dr. Yanez (Dkt. 27-1, pg 18).  Perjury *[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010]*

**6)** OCC, Judge Kumar wrote (Dkt 212-2, pg 33) "**grandstand**" and was disruptive during class".   There is not one documented instance of this so-called behavior (Dkt 212-1 , pg 44, dep. pg 31, line 4) "**It is not documented on paper**" deposition of Dr. Yanez.

**7)** MCA(Dkt 212-2, pg 40), states "**sabotaging exams**" according to Susan Zonias (Dkt 212, pg 15, dep. pg. 55-56, line 25) "he could lower the grades of everybody" and (Dkt 212, dep. pg 56, line 3) "it would change the curve".  Dr. Yanez contradicts and refutes Zonia's  allegations of sabotaging exams (Dkt 212-1, pg 45, dep. pg 35, line 8)

"**It did not sabotage the class curve.  I'm not sure what she is referring to, but it did not sabotage the class curve**".

*Perjury [Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010]*

The Courts ruined Woodward's professional and academic reputation over false statements, perjury, and denied Woodward Due Process.

**8)** AUA's partner "St. Joseph Mercy-Oakland Hospital in Michigan agreed to pay $4 million for allegedly violating the anti-kickback statute and Stark law" (Dkt 27-1, pg 16) a crime reportable to the FBI.

**9)** AUA's attorney David Gunsburg (P24235) was arrested in 2009 for: Kidnapping (an **elderly patient**), abduction, aggravated riot, riot, negligent assault.  An Ohio grand jury found him guilty.  Gunsburg plead guilty to: unlawful restraint, riot, and negligent assault (Dkt 180-2, pg 4); crimes reportable to the FBI.

**10)** Sallie Mae reported (Dkt 118, pg 7) "These loans were borrowed to finance your attendance at Kasturba Medical College; not American University of Antigua"; (Dkt 118, pg 8 & 9) are Nellie Mae loan certificates to Sallie Mea on Kasturba Medical College header; no mention of AUA; signed by AUA's Dean.  AUA's student loans were funneled and maintained thru GCLR, LLC N.Y. (Dkt 27-1, pg 3).  AUA was ineligible for these loans.  Falsifying bank documents is a crime reportable to the FBI. *[18 U.S.C. 1005]* Woodward requested a federal subpoena in Docket 118, but was denied.

**11)** SJMO exposed students (Woodward) to dangerous pathogens (Dkt 212-2, pg 30)

**"The doctor didn't tell us until after the procedure that we would be exposed to respiratory particles an pt infection.  He told us we should have had respiratory protection".**

**12)** AUA's Dean wrote the ECFMG (Dkt 118, pg 10) on **5/6/2008** "Steven Woodward is no longer enrolled"; the ECFMG denied Woodward to sit for the USMLE because of AUA's letter.  Woodward was not dismissed until **5/21/2008** (Dkt 118, pg 16)

**g)** AUA gave Woodward complete privileged consent, without time limitation, for "**all activities**", "**Their input is critical**", "**any academic or non-academic concerns**".

Woodward is protected by Federal Law 20 U.S.C. 1011a for "**speaking out**"

*[Farrington v. Bureau of Nat. Affairs, 596 A.2d 58 – DC, Court of Appeals 1991]*

**1)** AUA Student Handbook, (Dkt 188, pg 148-150) is a contract. The Student Handbook states (Dkt 188, pg 148) "**The rules and regulations outlined here are binding**".

(Dkt 188, pg 149) states "**AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors. Faculty Advisors or Deans.**"

**2)** AUA Fifth Semester Syllabus (Docket 188, pg 186, bottom) "Students will have the opportunity to evaluate lectures, practices, and **all activities**. **Their input is critical in developing and advancing the University's academic program**."

**3)** The AUA Student Handbook (Dkt 188, pg 150), "**The University adheres to the mandates of the United States Family Education Rights and Privacy Act (FERPA)**"; Title 20 U.S.C. 1232g(a)(6) For the purposes of this section, the term "**student**" includes any person with respect to whom an educational agency or institution maintains education records or personally identifiable information".

**4)** Title 20 U.S.C. 1011A(a)(2)(D) "students **should not** be intimidated, harassed, **discouraged from speaking out**, or discriminated against."

**5)** AUA gave Woodward complete and absolute consent, for "**all activities**", "**Their input is critical**", "**any academic or non-academic concerns**". Woodward is also protected by Federal Law 20 U.S.C. 1011a for "**speaking out**".

**6)** AUA official uses "**sucks**" in open student forums (Dkt 11, pg 15, line 1).

**7)** Susan Zonia, Chief Academic Officer, for SJMO, hired 2006 fired 2010 for

inappropriate conduct, behavior, and harassment (Dkt 180, pg20) admits to swearing at

SJMO in Docket 180 (pg 21 dep. pg 124, line 21)"**fuck**", (pg 22 dep. pg 127, line 24)

"**yank his dick**", and (pg 23 dep. pg 136, line 22) "**blow job**"

**A)** Susan Zonia's deposition (Dkt 180-1, pg 15, dep. pg 42, line 5) Q **"Did you**

**recommend that Steven Woodward be dismissed"** Zonia **"No, I did not"**

Oct, 23, 2007 Susan Zonia wrote an email to Victor Hrehorovich (Dkt 180-1 pg 16)

**"I would terminate him at this point"**  Susan Zonia lies under oath.

*[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010] &*

*[Havlik v. Johnson & Wales Univ. 509 F.3d 25 (2007)]*

**B)** Susan Zonia admits (Dkt 211-3, pg 15 -16, par 4)

> **"she occasionally cursed at work.  Not only did no one ever complain about this in
> any formal way(until solicited by Bignotti and HR), there is no evidence that
> anyone at the hospital has ever been disciplined, let alone fired, for an occasional
> curse or isolated raunchy remark.  Nor is anyone fired for expressing their
> opinions about others.  See Bignotti 41 (confirming that " a lot of people" at the
> hospital "make [negative] comments all the time about doctors and
> administrators", people voice their opinions, and no one is fired for that; at most,
> they may receive a non-disciplinary counseling."**

**C)** Per AUA's Student Handbook, privileged communications, Woodward "**forwarded**"

Dean Victor Hrehorovich an email( Dkt 180-1, pg 33) from Vasanth Jayaraman, VJ (Dkt

180-1, pg31).  Woodward forwarded the email because of major student complaints and

AUA prejudices between education sites.  VJ's email stated that students wrote

"**petition**" against the program; Miami students were allowed to study "Kaplin was

coming along" (Woodward was criticized by Zonia for requesting to study Kaplin (Dkt

212, pg 29) "time would be better spent in a Kaplin course") "we don't have those

quizzes anymore"; "it was unfair"; "School has been a waste of time"; "the Hospital and Metellus both agreed and had no problems telling the NY office to fuck off".

OCC, Judge Kumar wrote bias, false and deceiving statements against Woodward in her Order (Dkt 212-2, pg 33) "Plaintiff also used the "F word" in letters and emails to school officials.".  Woodward merely forwarded an email; as requested by AUA.

**D)** AUA's online testing application did not work for five consecutive days.  Woodward used his time to help AUA troubleshoot their testing software, during which time AUA discovered Woodward's **private** username: "auasucks".  Instead of thanking Woodward for aiding them in solving their testing problems; AUA fabricated a committee meeting against him stating (Dkt 212-1, pg 1) "unseemly username in ExamMaster".  OCC, Judge Kumar wrote (Dkt 212-2, pg 33 ) "unprofessional conduct and used the word "AUASUCKS" as his master program password".  AUA administration swears at work.  AUA's Student Handbook states (Dkt 188 pg 150) "**The University does not discriminate**".  Woodward argues violations per: 20 U.S.C 1011a(a)(2)(D), discrimination, speaking out,  First Amendment, Due Process, and bias by AUA and the Courts.



Conclusion

Woodward has been jailed over judicial lies, displaced from his home, is indigent, described as "Saboteur" and "Unprofessional" in court documents per testimony of liars, and his professional and academic reputation destroyed.

<u>Woodward requests:</u>

<u>**1)**</u> Dismissal of AUA's claims in total as sanctions for AUA failing to cooperate in discovery, failing to defend, writing frivolous motions, making false statements under oath (perjury), and AUA gave Woodward consent;

<u>**A)**</u> if not, Woodward requests the Court reverse the Permanent Injunction and allow Woodward to defend the seven(7) enjoined statements in a trial.

<u>**B)**</u> Woodward requests charges of contempt and imprisonment stricken from all records.

<u>**2)**</u> Woodward requests the disqualification of Judge Duggan and Judge Hluchaniuk from any further proceedings and reversal of all orders made against Woodward.

<u>**3)**</u> Woodward requests the Court allow Counterclaims (Dkt 193): breach of contract, tort violation, conspiracy to commit civil rights violation, conspiracy to commit fraud, fraud, defamation, obstruction, perjury, and false declarations.

<u>**4)**</u> Woodward requests the Court strike from the record the Orders from Oakland County Circuit Court and Michigan Court of Appeals.

<u>Authorities</u>

*1. ([Arnstein v. Porter, 154 F.2d 464, 468, 2d Cir 1946] "summary judgment must be denied when "there is the slightest doubt as to the facts", "Of course it is error to deny trial when there is a genuine dispute of facts")*

*2. ([Hadley v. US 45 F.3d 1345 Court of Appeals, 9th Cir 1995]*

*"must not be prejudiced")*

*3. ([Bulloch v. US, 763 F.2d 1115, 1121 (10th Cir. 1985)] "Fraud on the court" is fraud which is directed to the judicial machinery itself", "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases")*

*4. ([Cooter & Gell v. Hartmarx Corp., 496 US 384 Supreme Court 1990 R.D. 189, 191 (1988)] "Rule 11's requirement that a court "shall" impose sanctions "if a pleading, motion, or other paper is signed in violation of this rule")*

*5. ([David v. Caterpillar, Inc. 324 F.3d 851(2003), No. 02-1354 US Court of Appeals, 7th Cir.] "the sanctions of exclusion is automatic and mandatory")*

*6. ([Eastway Const. v. City of New York, 762 F.2d 243 Court of Appeals 2nd Cir. 1985] "subjective good faith no longer provides the safe harbor it once did", "subjective bad faith is no longer required to trigger the sanctions imposed by the rule, sanctions shall be imposed")*

*7. ([Farrington v. Bureau of Nat. Affairs, 596 A. 2d 58 –DC; Court of Appeals] "defamation claim was precluded by the defense of consent")*

8. ([Havlik v. Johnson & Wales Univ. 509 F.3d 25 (2007)] "a qualified privilege is not a jujube that, like some magical charm, wards off liability for defamation, come what may...if the plaintiff proves that the privilege-holder published the offending statement out of spite, ill will, or malice")

9. ([Mangla v. Brown Univ. 135 F.3d 80.83(1st Cir. 1998] "contracts contain an implied duty of good faith and fair dealing")

10. ([Perez v. Miami-Dade County, 297 F.3d 1255, US Court of Appeals, 11 Cir. July 17, 2002.] "When a party like Perez, however, uses the rule to harass the other side or, as in this case, with wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon")

11. ([Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010] "dismiss with prejudice as a sanction for perjury", "As the Supreme Court has stated, "false testimony in a formal proceeding is intolerable" and therefore "perjury should be severly sanctioned in appropriate cases")

12. ([Ross v. Creighton University, 957 F.2d 410-Court of Appeals 7th Cir. 1992] "basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract")

13. ([Salgado v. Gen. Motors Corp, 150 F.3d 735, 742(7th Cir 1998)] "failed to comply with court's deadline for the submission", "without a case", "shall not, unless such failure is harmless, be permitted to use as evidence at a trail, at a hearing, or on a motion any witness or information not so disclosed")

35

14. *([U.S. District Court Western District of Washington at Seattle, MCL 1407]*

*"Request for Admissions: "A party may also do nothing whatsoever in response to a*

*request, thus constituting an admission, request an extention of time, or, as defendant did*

*here, move for a protective order")*

6/11/2012

## Certificate of Word Count

Mr. Woodward Certifies that the Word Count of "*Presentation of Mr. Woodward's Issues*" is: **9,735**

Microsoft Office Word 2003 (11.8345.8341)

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810)235-7267

6/1/2012

**<u>Certificate of Service</u>**

The undersigned certifies that the foregoing **<u>Presentation of Mr. Woodward's Issues</u>**

and this Certificate of Service were served upon Plaintiff by U.S. mail to American

University of Antigua, via council, Eric A. Buikema (P58379), 322 West Lincoln Ave,

Royal Oak, Michigan 48067

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810)235-7267

6/1/2012

1

# FLAT RATE



  

**$5.90**



PRIORITY
MAIL

UNITED STATES PO



www.usps.com

0332 0090 0000 6017 1110

**HOW TO USE:**



**1. COMPLETE ADDRESS LABEL AREA**
Type or print required return
address and addressee information
in customer block (white area)
or on label (if provided).



**2. PAYMENT METHOD**
Affix postage or meter strip to area
indicated in upper right hand corner.



**3. ATTACH LABEL (if provided)**
Remove label backing and adhere
over customer address block area
(white area).



PRIORITY®
MAIL

UNITED STATES POSTAL SERVICE

For Domestic
and International Use



From  Steven Woodward
      7211 Brittwood Ln
      Flint, MI 48507

TO    United States Court of Appeals
      for the Sixth Circuit
      100 East Fifth Street, Room 540
      Potter Stewart U.S. Courthouse
      Cincinnati, Ohio 45202-3988
      Attn: Linda Niesen

Label 228, January 2008

▲ PLACE LABEL HERE ▲

The efficient FLAT RATE ENVELOPE.
You don't have to weigh the envelope...Just pack all your correspondence and
documents inside and pay only the FLAT RATE Priority Mail postage.

**We Deliver.**