RECEIVED

JUL 23 2012

LEONARD GREEN, Clerk

Case No. 12-1128/12-1584/12-1585/12-1738

**United States Court Of Appeals For The Sixth Circuit**

**American University of Antigua College Of Medicine**

**Plaintiff-Appellee,**

**v.**

**Steven Woodward,**

**Defendant-Appellant.**

**<u>Appellant Brief Case Nos. 12-1128/12-1584/12-1585/12-1738</u>**

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

Case: 12-1128    Document: 36    Filed: 07/23/2012    Page: 1

**<u>Table of Content:</u>**

1. Woodward previously filed brief for Ref 12-1128

2. 12-1584 Notice of Appeal, NOA of Dockets 206, Docket 214, and NOA (Docket 207)

3. 12-1585 Appeal of Permanent Injunction (Per Docket 218 NOA)

4. 12-1738 Notice of Appeal (Docket 222) Final Judgment (Docket 221)

Authorities

Certificate of Word Count

Certificate of Service

Case: 12-1128     Document: 36     Filed: 07/23/2012     Page: 2

Woodward previously filed his brief for **Ref 12-1128.**

**12-1584 Notice of Appeal, NOA of Dockets 206, Docket 214, and NOA (Docket 207).**

Judge Duggan granted Woodward permission to petition the United States Court of Appeals in Opinion and Order (Dkt 206, pg 5, par 2) **"the appropriate avenue to raise those assertions at this junction is through an appeal to the Sixth Circuit Court of Appeals."** Appellate Rule 5 Appeal by Permission.

Judge Duggan prejudged against Woodward, therefore should have been automatically disqualified prior to writing Order (Dkt 185). Woodward was violated by court bias, denied Civil Rights: Due Process, First Amendment, Fourteenth Amendment, Freedom and Liberty. The court aided and protected AUA and St. Joseph Mercy Oakland Hospital, SJMOH, from their own admission of guilt and violation of Federal Law. Woodward defends against Orders, Dockets 206 and Docket 214.

**Defendant's motion for reconsideration (Doc. 188);**

**Defendant's emergency motion to strike docket entry 192 (Doc. 196),**

**Defendant's motion for counterclaims (Doc. 193), and**

**Defendant's emergency motion for leave to file a motion to dismiss (Doc. 198).**

**a)** Woodward's understanding of Judge Duggan's Order (Dkt 206) is the judge read and considered Defendant's motion for reconsideration (Doc. 188) **"Woodward does not raise any arguments in his motion for reconsideration"** reversing Opinion in Docket 192 **"Local Rule 7.1(h)(2) provides that no response to the motion is permitted unless the Court Orders otherwise".** Judge Duggan's statements in Docket 206 infer

Case: 12-1128     Document: 36     Filed: 07/23/2012     Page: 4

Judge Duggan did consider Docket 188 against the court's Opinions and Orders (Dkt 184 and Dkt 185).

**b)** Judge Duggan should have disqualified himself for prejudging Woodward and his evidence. Defendant's Motion for Reconsideration (Doc. 188).

**1)** This case is all about electronic data, video, audio, and text files Woodward posted on the Internet. The court **prejudged and prjudiced** Woodward; denying the production and burdened Woodward concerning the production of electronic evidence of which this case was originated; publication of videos and www.aua-med.com. Judge Duggan wrote (Dkt 168, pg 1, par 3) "However, I want to make it perfectly clear to Mr. Woodward that the Court will not listen to any disks he wants filed **because the Court is confident that it would spend a considerable amount of time listening to information not particularly relevant or pertinent to the issues raised in the motion for summary judgment**" showing **Judge Duggan prejudged** Woodward. Judge Duggan should have disqualified himself prior to writing Opinions and Orders, Dockets 184 and Docket 185. *[U.S. v. Sciuto 531 F. 2d 842 Court of Appeals, 7th Cir.] "The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause", "If information in a report unavoidably causes him to prejudge an issue of fact bearing on revocation, he must disqualify himself", "he will be required to disqualify himself unless he has refrained from prejudgment", "Because the record in this case shows that the District Court prejudged an issue on which he decision to revoke probation may have turned, the order revoking probation must be reversed and the case remanded for a new hearing before another judge")*

3

**2)** Woodward's Motion for Reconsideration (Dkt 188) the court contends (Dkt 206, pg 3) **"Woodward does not raise any arguments in his motion for reconsideration that his did not raise before the Court issued its decision on December 5, 2011."** and **"palpable defect"** inferring that Woodward did not produce an obvious defect that would result in a different disposition of the case. According to FRCP 26(a)(1)(A)(2) evidence is defined as **"electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses"**

Judge Duggan should have disqualified himself sua sponte for bias, prejudice, violation of Due Process against Woodward prior to writing Order (Dkt 185) *[Hadley v. US 45 F.3d 1345 Court of Appeals, 9th Cir 1995], [Levine v. U.S., 362 US 610 –Supreme Court 1960], [Liljeberg v. Health Services Acquisition Corp. 486 US 847 Supreme Court], [Liteky v. US, 510 US 540 Supreme Court 1994], [Pfizer Inc. v. Lord, 45 F.2d 532 – Court of Appeals, 8th Cir. 1972], [Taylor v. O'Grady, 888 F.2d 1189 Court of Appeals, 7th Circuit, 1989], [U.S. v. Balistrieri, 779F.2d 1191 – Court of Appeals, 7th Cir.]*

**A)** Woodward filed motion "Leave to file Nontraditional Documentation" (Dkt 3) on **3/30/2010** and motion for "Sealed Documents" (Dkt 182) on **11/22/2011** requesting production of palpable evidence against AUA. Court Order (Dkt 174) filed 10/14/2011 denied Woodward's "Defendant's Request for Filing Electronic Data (Dkt, 132) filed 4/06/2011; Order (Dkt 174) was filed six(6) months after Woodward filed Docket 132. Woodward's motion (Dkt 132) written prior to AUA's Motion for Summary Judgment

(Dkt 143) demonstrates the court allowed AUA to seek Summary Judgment knowing Woodward had palpable evidence the court wanted to suppress.

**B)** The court burdened Woodward to transcribe electronic files of just one of many discs, volumes of electronic files palpable evidence to support his defense.

Judge Duggan allowed Woodward to play one video in court during the Sept, 20, 2011 hearing. The video included palpable evidence that AUA lied to students and issued worthless diplomas to students. The Nursing program started in 2009 and was a two year Associates Degree program. Judge Duggan stated (Dkt 204, pg 60, line 5) "**The Court: Doesn't support your case at all**" and (Dkt 204, pg 60, line 17) "**deficient nursing program**" rejecting Woodward's evidence differentiating between AUA nursing students and AUA medical students of which there is no differentiation in the enjoined statements in Order (Dkt 185) concerning an AUA student. The video is a Fox News Report, the disc is in the Court's possession titled "Docket 168" Electronic-Files/Fox-News/Fox-News-AUA.mp4, Woodward transcribed it in (Dkt 170, pg 104, line 7) Rosie Valasquez (sp)= RV "**RV: <u>They lied to me I was cheated</u> I was sent, I went to Antigua I left my family and I gave them two years our of my life to come back to nothing**", (Dkt 170, pg 104, line 9) "**FOX: The University's own literature tells students they'll be eligible to sit for the National Council Licensure Examination known as NCLEX exam once they graduate.**", (Dkt 170, pg 104, line 14) "**FOX: <u>But since the American University of Antigua began it's nursing program back in 2009 there isn't one graduate from New York whose been able to take the state board exam to become a nurse.</u>**" Neal Simon, President and General Counsel for AUA, was interviewed and verified the situation (Dkt 170, pg 105, line16) "**NS: After we knew there was a serious problem**

**with the program we never accepted another nursing student."** Neal Simon produces

palpable evidence on National News that statements, which Woodward is enjoined from

publishing, **"AUA beaches contracts."**, **"AUA routinely commits fraud upon its**

**students"** and (Docket 1, pg 10) **"o. AUA agents are liars"** are true; therefore **"AUA**

**committed perjury"** is true; no safe harbor *[Eastway Const. v. City of New York, 762*

*F.2d 243 Court of Appeals 2nd Cir. 1985]*

3) The court's statement in Opinion and Order (Dkt 206, pg3)

 **"Woodward does not raise any arguments in his motion for reconsideration that his**

**did not raise before the Court issued its decision on December 5, 2011."** is false.

In the Motion for Reconsideration (Dkt 188), Woodward defended against false

statements contained in Opinion (Dkt 184) which protect AUA from Woodward's

statements and counterclaims.

**A)** It is uncontested that an AUA student was sexually assaulted. The court was made

aware of this during the April 19, 2010 hearing (Dkt 19, pg 19, line 19).

**"The Court: That's the spin you put on it. But the statement itself is true, "AUA**

**students are sexually assaulted", have they?**

**Mr. Buikema: An AUA student was sexually assaulted."** and (Dkt 19, pg 37, line 12)

**"Mr. Woodward: I gave – the article that's inside this example right here, it's**

**Exhibit No 4, Your Honor. I showed this one example and I explained and read this**

**one exhibit from Antigua. I believe it's from the Antigua Sun, Your Honor, that**

**showed that an AUA student was sexually assaulted."**

**i)** AUA's argument rested on **"tense"** of the word **"students"** versus **"student"**. AUA's

own exhibits and Judge Duggan's own statements proved AUA's claims are lies, signed

under oath, in a verified complaint and signed sworn affidavit, which is "perjury". The enjoined statement in Order (Dkt 185) **"AUA committed perjury"** is true. The fact is AUA wanted Woodward's Web site shut down.

**ii)** AUA's claim and Judge Duggan's Order (Dkt 185) on this matter demonstrates a disregard for Federal Law, "The Clery Act" title 20 U.S.C. 1092(f) and the safety of United States citizens attending AUA, a foreign medical school. AUA made false statements and lies, under oath and before the United States Federal Courts for profit and reputation.

Judge Duggan's statement (Dkt 184, pg 23):

 **"Woodward no longer states on his website that "AUA students are sexually assaulted" (see Request for Admissions No. 22 (emphasis added)); instead, he asserts: "AUA student sexually assaulted" see http://aua-med.com. Woodward presents evidence to show that this is a true statement"** is false.

Woodward defended against this false statement in Motion for Reconsideration (Dkt 188, pg 8) **"Woodward NEVER published "AUA students are sexually assaulted"**.

AUA's own dockets verify Judge Duggan's statement is false. Plaintiff's Brief in Support of its Motion for a Preliminary Injunction (Dkt 8-4, pg2) states **"AUA _student_ sexually assaulted!"** as published by Woodward on http://www.aua-med.com. AUA wrote in Docket 1 on page 5 and page 10 "h. **AUA _students_ are sexually assaulted"**. AUA verifies Woodward's statement **"AUA _student_ sexually assaulted!"** in Motion for Summary Judgment (Dkt 143-3, pg2). Woodward's statement never changed from AUA's initial Docket 1 claim filed in March 11, 2010 thru Docket 143, April 29, 2011.

7

Case: 12-1128     Document: 36     Filed: 07/23/2012     Page: 9

The fact is Woodward's statement never changed; Woodward was forced to remove it from his Web site by Judge Duggan by his conflicting Orders (Ref. 12-1128).

Per (Dkt 46, pg 3) <u>"The court has ordered the Defendant not ot make any modification to the content of the Web site and this request has been obeyed."</u>

**iii)** AUA's own exhibits prove Woodward never made the statement **"AUA _students_ are sexually assaulted"**, this statement is perjury committed by Neal Simon and AUA and proving the permanently enjoined statement **"AUA committed perjury"** is true.

**B)** Judge Duggan's statement (Dkt 184, pg 23):

**"AUA's student pass rate for USLME medical board exams is only 22.9%" (Request for Asmissions No. 28.)  Instead Woodward states that "Antigua only has a 22.9% USMLE Pass Rate!"** is a false statement.  Woodward defended against this false statement in the Motion for Reconsideration (Dkt 188, pg 8) **"Woodward NEVER published "AUA's student pass rate for USMLE medical board exams is only 22.9%"**

AUA's own exhibits verify Judge Duggan's statement is false.  Plaintiff's Brief in Support of its Motion for a Preliminary Injunction (Dkt 8-4, pg 2) states **"Antigua only has a 22.9% USMLE Pass Rate"** was published by Woodward on http://www.aua-med.com.  AUA wrote in Docket 1 on page 5 and page 10 "l. **AUA student pass rate for USMLE medical board exams is only 22.9%"**.  AUA's Motion for Summary Judgment (Dkt 143-3, pg 2) publishes Woodward's statement **"Antigua only has a 22.9% USMLE Pass Rate"**.  AUA's own exhibits prove Woodward never made the statement **"AUA's student pass rate for USMLE medical board exams is only 22.9%"**.

Judge Duggan is protecting AUA and Neal Simon from perjury, false declarations before grand jury or court, and counterclaims.

**C)** The court was quick to imprison Woodward, for contempt, defending the lies written by Judge Duggan in Opinion (Dkt 184). The court refused to hold a hearing against AUA for contempt for disobeying court orders as described in Woodward's motion (Dkt 136) and (Ref 12-1128); denying Woodward's Civil Rights and written property.

 Judge Duggan violated Woodward's Civil Right of Freedom, Liberty, and Due Process, First Amendment and Fourteenth Amendment by handcuffing, shackling, and imprisoning Woodward for defending himself against AUA's and the court's false statements. Per (Dkt 199, pg 20, line 6):

**"The Court: I don't know what you're talking about I lied.**

**Mr. Woodward: Page 23, you lied.**

**The Court: What did I say that was not correct?**

**Mr. Woodward: You said, "Woodward no longer states on his website that AUA students are sexually assaulted (see request for admissions number 22 (emphasis added)); instead, he asserts: AUA student sexually assaulted. See, http://aua-med.com Woodward presents evidence to show that this is a true statement. Similarly, Woodward no longer states that AUA's student pass rates for USMLE medical board exam is only 22.9 percent, (request for admissions number 28). Instead—"**

**The Court: Hold on. Which of those am I incorrect on?**

Mr. Woodward: "No Longer", I've never said that, sir.  I never said that statement and you knew it day one.  You knew that blatant perjury by this son of a bitch Neil Simon and his affidavit—"

The Court: Sir, you're in contempt."

**D)** Judge Duggan violated Woodward's Civil Right of Due Process by allowing AUA to produce documentation AUA was barred from producing by FRCP 37(c)(1), FRCP 26(a)(1)(A)(iv), and FRCP 34; as described in Ref. 12-1128.  AUA produced no discovery to support their claims by the close of discovery 4/11/2011.  Woodward requested FRCP 34 production 11/22/2010.  AUA did not respond to Woodward's FRCP 34 request until 11/11/2011.  AUA failed to comply with court's deadline for submission and are "without a case" and "shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed" *[Salgado v. Gen. Motors Corp, 150 F.3d 735, 742(7th Cir 1998)]*

Per (Dkt 199, pg 22, line 21)

"The Court:  Then at that time I want you to be prepared to quickly go and identify each of these statements on the website so I can see it, he can see it, and he can indicate it either is or is not there.

Mr. Buikema: I'm happy to do that.  **In fact, we have some exhibits that might be helpful to you, do you want me to delay those until two o'clock?**

**The Court: Why don't you furnish those to him and the Court before you started. You've got copies for him?**

**Mr. Buikema: I do**."

10

**E)** Woodward's Motion for Reconsideration (Dkt 188) defends against Judge Duggan's false statement in Opinion (Dkt 184, pg 4)

**"Woodward did not timely answer; however, he apparently served late responses to AUA's requests "at his reconvened deposition" which the Court gleans to have been in March 2011"**

this effort to establish prejudice for AUA for an untimely response to AUA's FRCP 36 Request for Admissions; which AUA's Motion for Summary Judgment (Dkt 143) relies. Woodward answered and personally served AUA's FRCP 36 requests at the hearing before Judge Hluchaniuk on December 22, 2010. AUA told Judge Hluchaniuk they would accept Woodward's discovery, but later admitted to leaving the December 22, 2010 without taking anything, refusing all requested discovery Woodward brought to the hearing.  AUA lied to Judge Hluchaniuk. (described in Ref. 12-1128)

Judge Duggan was aware of the fact prior to writing his Opinion (Dkt 184).

During the August 11, 2011 hearing (Dkt 169, pg 24, line 12)

**"Mr. Woodward: That is not true.  Sir, I brought to December 22[nd], 2,500 pages of documentation, interrogatories, the answers to his interrogatories, that answers to his request to admissions and he's refusing to take this information."**

**F)** Judge Duggan's bias and violated Woodward's Right to Due Process and Fourteenth Amendment against Woodward is proven by court orders.  Judge Duggan ruled for AUA's Summary Judgment (Dkt 143) based on late responses of FRCP 36 Request for Admissions.  The court dismissed and/or made moot Woodward's pleadings against AUA for failure to answer FRCP 36 Request for Admissions in Good Faith, AUA refused to produce any FRCP 34 discovery to defend AUA claims, contempt for failure to respond to court orders, and perjury and lying before the court.   Woodward's motions

against these violations (including Dkt 136 and Dkt 188); sanctions for these violations include dismissal of all AUA claims. (described in Ref. 12-1128)

Woodward's Motion for Reconsideration (Dkt 188, pg 2) argues

**"There is a genuine dispute as to material fact"**, **"The Plaintiff has failed to perform Discovery including production of documentation"**, **"The Plaintiff has failed to answer 89% of the Defendant's Request for Admissions"** , **"The Court has not ruled on these issues, prior Order 185, including applying requested sanctions against the Plaintiff per FR 37(c)(1)(C) and FR 37(b)(2)(A)(v) dismissal of Plaintiff's claims."**,

and **"Mr. Woodward requests a reversal on Court Order 186 and a fair hearing on those matters."** Court Order 186 **"Order Terminating Motions As Moot (Dkt 136, 140, 141)"** Woodward's **"Motion For Sanctions"**;  (Dkt 136, pg 2)

**"The Plaintiff has failed to perform their duties in Good Faith and is now in clear violation of FR 37 Failure to Make Disclosures or to Cooperate in Discovery.  The Plaintiff is in Civil Contempt for failing to respond as defined in the Court Order to the original motion."**

Woodward's Motion for Sanctions (Dkt 136) was filed prior to AUA's Motion for Summary Judgment (Dkt 143).   Judge Duggan and Judge Hluchaniuk would not hear Woodward's motions concerning discovery violations and contempt against AUA; sanctions which would dismiss AUA claims. (described in Ref. 12-1128).

**G)** Judge Duggan sites E.D. Mich. LR 7.1(h)(3) (Dkt 206, pg 3, par 3) **"palpable defect"** and (Dkt 214, pg 2) **"he fails to demonstrate a palpable defect and/or simply asserts arguments that he repeatedly, previously made."** to reject Woodward's defenses.

Woodward did produced "palpable defect" in AUA's own confessions, arguments, and documentation signed under oath.  Woodward's Motion for Reconsideration (Dkt 188) defends against Judge Duggan's statement (Dkt 206, pg 3) **"palpable defect and that a**

different disposition of the case must result from a correction of such a palpable defect. E.D. Mich. LR 7.1(h)(3)"

1) Woodward defends in Motion for Reconsideration (Dkt 188, pg 16) "**Consent**"

*"defamation claim was precluded by the defense of consent" ([Farrington v. Bureau of Nat. Affairs, 596 A. 2d 58 –DC; Court of Appeals]*

**"f) The Court has erred in that "Consent" was given Woodward. (Wallace v. Skadden)(Farrington v. Bureau of Nat'l Affairs)(LeBaron v. Board of Public Defense)(Utecht v. Shopko Dep't Store) "Consent is an absolute defense to defamation."**
**A Student Handbook, Exhibit 25, is a contract (Fellheimer v. Middlebury College).**
**1) Language of a contract is present on page 1**
**"The rules and regulations outlined here are binding"**
**2) Page 12 "AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans."**
**3) DOC – Fifth Semester Syllabus VH, JEC (08/31/07), Exhibit 26.**
**"Students will have the opportunity to evaluate lectures, practices, and all activities. Their input is critical in developing and advancing the University's academic program."**
**4) AUA Student Handbook, page 25, Exhibit 25,**
**"The University adheres to the mandates of the United States Family Education Rights and Privacy Act (FERPA)" 20 U.S.C. 1232G(a)(6) For the purposes of this section, the term "student" includes any person with respect to whom an educational agency of institution maintains education records or personally identifiable information"**
**5) 20 U.S.C. 1011A(a)(2)(D) "students should not be intimidated, harassed, discouraged from speaking out, or discriminated against."**
**Mr. Woodward had complete and absolute consent, for ALL ACTIVITIES, from AUA and protection by Federal Law 20 U.S.C. 1011A for "speaking out" prior to the filing of the Plaintiff's Docket 1 claims."**
**The Plaintiff just did not like the medium of which the Mr. Woodward used for communication. Mr. Woodward's "Speaking Out" has proven that AUA, a Medical College, has violated Federal Law 20 U.S.C. 1232g, the disclosure of Private Student Documentation of over 150 students"**

2) Judge Duggan's Opinion and Order (Dkt 206, pg 2) states

**"Woodward refused to acknowledge that the prohibited statements remained on his website and eventually offered to shut down his website completely as this, in his view, was the only means he could see to satisfy the Court and AUA that he had complied with the Court's permanent injunction order."**

13

is a false statement.

Woodward was imprisoned for exposing Judge Duggan's lies and his bias against Woodward. Woodward exposed the fact that Judge Duggan allowed AUA to produce exhibits they were barred from producing by Federal Rules of Civil Procedure, Judge Duggan disregarded Woodward. The January 18, 2012 hearing can only be described as an Inquisition or Kangaroo Court. Woodward was railroaded by Judge Duggan, traumatized by the wrongful imprisonment. Woodward saw no other option to prevent him from being wrongfully imprisoned, monetarily fined into further, complete and absolute financial ruin, and his family name further destroyed by the lies and corruption of the courts.

**b)** Woodward's Counterclaims (Dkt 193) are permissive counterclaims, resulting from AUA's actions during the course of this case and permissible by FRCP 13(b) and are separate and distinct from claims filed in Michigan courts. Woodward requested Counterclaims in Docket 146, 5/03/11, not answered by the court until Order (Dkt 174) filed on 10/14/2011. Woodward was prejudiced by the court and AUA.

*[Hadley v. US 45 F.3d 1345 Court of Appeals, 9th Cir 1995]*

Woodward brought this prejudice before Judge Duggan during the hearing (Dkt 169, pg 35, line 5) "Motion to File Counter-Claims", (Dkt 169, pg 35, line 7)

"Mr. Woodward: Yes, sir. Seeing that in this case, **Mr. Buikema has failed to produce my student records, I request permission to file counter-claims against AUA for a civil rights violation for failure to provide--**

The Court: You'll have to file a motion that I can read because I can't imagine what you're talking about. You'll have to file a motion, he'll respond and then I'll decide whether you can file any counter-claim at this late date. A written motion."

14

Woodward's motion for counterclaims was file 5/03/2011 after discovery was closed and AUA refused to produce Woodward's student records; or any FRCP 34 discovery. Judge Duggan dismisses Woodward's counterclaims being a party to them, aiding in the violation of Federal Law and denying Woodward's Due Process.

Judge Duggan's Opinion and Order Denying Defendant's "Response to Docket 206" (Dkt 214) denies Woodward's Defendant's Response to Docket 206 (Dkt 211) which Woodward defends Counterclaims (Dkt 193) in (Dkt 211, pg 11, sec. C) "**Counterclaims**", (Dkt 211, pg13) "**Docket 193 Counterclaims are clearly separate, distinct, and different.**"

Judge Duggan's statements (Dkt 214, pg 1) "**a motion for reconsideration shall not be granted unless the movant demonstrates a palpable defect, the correction of which"will result in a different disposition of the case**",

and (Dkt 214, pg 2)

"**he fails to demonstrate a palpable defect and/or simply asserts arguments that he repeatedly, previously made.**" are false.

The court admits to detailed knowledge of Woodward's case against AUA and St Joseph Mercy Oakland Hospital et al, (Dkt 206, pg 4) "**Moreover, at least some of Woodward's proposed counterclaims are futile as he seeks to litigate issues already decided in his state law case against AUA and others**" a false statement demonstrating Judge Duggan is protecting AUA and "others"; being St Joseph Mercy Oakland Hospital and Susan Zonia. The counterclaims prove statements Woodward is enjoined from publishing, per Order (Dkt 185) are true. Woodward admits that proving counterclaims (Dkt 193) true will be used to defend against the violation of bias and Due Process

against Woodward by the Michigan courts. *[U.S. v. Throckmorton, 98 US 61 Supreme Court 1878] "Fraud vitiates every thing, and a judgment equally with a contract; that is, a judgment obtained directly by fraud", "nor, when it consists in swearing only, will I ever grant a new trial, unless it appears by deeds, or writing, or that a witness on whose testimony the verdict was given was convicted of perjury"*

In this case AUA attempted to blame Woodward for AUA's disclosure of over 150 private student records, violating Federal Law, FERPA. AUA refuses to produce any of Woodward's student records. Actions like this in Federal Court, is palpable evidence of AUA blaming Woodward, a student, for their violation of Federal Law and own Student Handbook, and student Due Process Rights. This type of violation is why Woodward filed the Michigan lawsuit. The Docket 168 disc has the audio files of a classroom and committee meeting conversations that would prove both Woodward and another student innocent of charges made by AUA.

(Disc 168: Electronic-Files/Somaraju and Electronic-Files/Committee-meeting-1)

Woodward transcribed the audio file of a committee meeting against him (Dkt 170, pg 27, line 16) **"I mean I have this on video, or audio <u>I have it on audio her what her conversation was to start the class. But of course you don't want to hear that,</u>"** Dkt 170, pg 29, line 12) **"<u>Well seeing that you wont let me build my case</u> I guess I don't I guess that's what I have I mean obviously I'm right on some points but you wont let me prove it, and so, and so I can't prove it."**

AUA refuses to produce meeting minutes requested by Woodward per FRCP 34.

Woodward's counterclaims are: <u>Breach of Contract</u>, <u>Tort violation</u>, <u>Conspiracy to Commit Civil Right Violations</u>, <u>Conspiracy to Commit Fraud</u>, <u>Fraud</u>, <u>Defamation</u>, <u>Obstruction</u>, <u>Perjury</u>, <u>False Declarations Before Grand Jury or Court</u>.

**1)** Woodward's student records are guaranteed to be produced for inspection by Federal Law. AUA, Judge Duggan and Judge Hluchaniuk prevented Woodward access to his own student records. AUA's own actions in this case prove the enjoined statement per Order (Dkt 185) including **"AUA breaches contracts"** are true.

The court was made aware AUA was violating Federal Law in defense Motion to Compel Plaintiff (Dkt 121, pg1)

"The Plaintiff **refuses to produce any of the requested documentation, including the Defendant's, Steven Woodward, own school records.** The Plaintiff removed access to the Defendant's own private email address stevenw@auamed.net after the Defendant filed a lawsuit against them, prior to the wrongful dismissal. **The Plaintiff has refused to produce access to stevenw@auamed.net email account.**"

The court refuses to order AUA to produce Woodward's own student records per FRCP 34 Request for Admissions and multiple motions. The court ordered moot in Order (Dkt 186) Woodward's request for his own student records; denying Woodward's legal rights. The court aided AUA in the violation of Federal Law, Rights, and Federal Rules of Civil Procedure 34.

Federal Law demands the production of student records:

The Family Educational Rights and Privacy Act, FERPA, title 20 U.S.C. 1232g(a)(1)

**"the right to inspect and review educational records".**

*[Parraway v. Andrews University, 50 BR 316 – Dist. Court, WD Michigan 1984]*

***"Accordingly, an order will be entered ordering Defendant to release Plaintiffs' academic transcripts upon payment of the customary processing fees."***

*[Fay v. South Colonie Cent. School Dist. 802 F.2d 21 – US Court of Appeals, 2nd Cir. 1986] "A section 1983 violation is a species of tort liability in which the level of damages is determined by applying principles derived from tort law", "His FERPA claim is remanded for further proceedings to determine the amount of compensatory damages."*

*([Mangla v. Brown Univ. 135 F.3d 80.83(1st Cir. 1998] "contracts contain an implied duty of good faith and fair dealing")*

*([Ross v. Creighton University, 957 F.2d 410-Court of Appeals 7th Cir. 1992] "basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract")*

*({Fellheimer v. Middlebury College, 869 F. Supp. 238 – Dist Court, D. Vermont 1994] " Merrow v. Goldberg, 672 F.Supp. 766, 774 (D. Vt 1987)(Billings, J.) found that "[b]etween a student and a college there is a relationship that is contractual in nature", " there is no legal bar to the plaintiff's breach of contract action based on the terms of the College Handbook.")*

**A)** Woodward requested his student records on 11/22/2010, per FRCP 34, these records were due 12/22/2010 and by 1/6/2011 per the AUA Student Handbook.

Woodward filed Motion to Compel, (Dkt 121) on 3/24/2011; AUA had already violated both FRCP 34, Federal Laws, and the AUA Student Handbook by approximately three(3) months. Order (Dkt 185) was filed 12/05/2011 a year after Woodward's student records were due. Woodward requested 46 line items of production; 25 line items specifically

requested Woodward's own student records. Six(6) examples of Woodward's FRCP 34 requests include (Dkt 121, pg4):

i) "**11. Please produce a copy of the email written by Jorge Calderon to Susan Zonia dated Saturday, December 15, 2007 subject: FWD: Planning the grievance hearing including the "note" from Dr. Cain**."

ii) "**20. Please produce a complete copy of the AUA student file for Steven Woodward.**",

iii) "**21. Please produce a copy of all files AUA has concerning Steven Woodward.**",

iv) "**22. Please produce a copy of all meeting minutes pertaining to Steven Woodward.**",

v) "**23. Please provide a copy off all reports, findings, and recommendations used to form the basis for all Grievance Committee Meeting finding concerning Steven Woodward.**",

vi) "**24. Please produce a copy of all written communications between AUA and St Joseph Mercy Oakland Hospital pertaining the December 2007 Grievance with Steven Woodward.**"

**B)** AUA refused to produce any documentation Woodward requested per FRCP 34. Woodward filed Motion to Compel (Dkt 121) on 3/24/2011; the production over three months late.

The court filed Order (Dkt 124) requiring a response

**"The deadline for plaintiff's response is April 11, 2011. Failure to file a response may result in sanctions, including granting all or part of the relief requested by the moving party."**

19

AUA refused to respond to Woodward's FRCP 34 requests demanded by court Order (Dkt 124). AUA refused to produce any documentation including any of Woodward's personal Student Records by the close of discovery 4/11/2011.

Woodward filed Motion for Sanctions (Dkt 136) on 4/15/2011.

court Order (Dkt 174, pg 2, par 2) **"As to defendnat's motion for sanctions, the Court interprets it to be more of a second motion to compel".** The court finally files Order (Dkt 186) **"Order terminating as moot 136 Motion for Sanctions".**

AUA did not respond to Woodward's FRCP 34 requests until 11/11/2011 (with no production of documents) (Dkt 212-2 pg 48-50 to 212-3 pg 1-17) a year after being served FRCP 34 requests for Woodward's own Student Records.

**C)** AUA admits to the FERPA contractual relationship, receiving Federal Financial Aid, and Woodward's Rights to his student records per AUA's Student Handbook.

AUA filed (Dkt 1, pg 1), "Verified Complaint" ; (Dkt 1, pg 12) is Neal Simon's sworn affidavit stating **"I, Neal Simon, am an officer of the American University of Antigua and its general counsel. I have personal knowledge of the facts set forth in this complaint and, having read the same, I hereby attest that each and every allegation contained herein is true to the best of my knowledge, information and belief."**

**i)** AUA admits in Docket 1, which is sworn under oath as true:

(Dkt 1, pg 2, #4) **"private information about AUA students protected from disclosure under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232(g)."**

(Dkt 1, pg 9, #49) **"The academic records are otherwise private and are protected from public disclosure under federal law."**

(Dkt 1, pg 9, #50) "immediate and obvious impact on the affected **students' privacy rights**"

(Dkt 1, pg 9, #51) **"AUA could lose significant access to federal educational funding and student aid"**

**ii)** During the April 19, 2010 hearing (Docket 19) AUA admits:

(Dkt 19, pg 13, line 15)

"FERPA prohibits disclosure of students' information by the University itself. **And has, as consequence, the termination of federal funding, which my client does receive and some of the students receive benefits under that provision."**

(Dkt 19, pg 14, line 15) "Mr. Woodward's actions in disclosing the student information could **cause the federal government to terminate funding"**

(Dkt 19, pg 15, line 21) "publication of private student information which would be **a violation of FERPA is a tortuous interference"**

The Definition of **"Tortuous Interference"** is: "interfering with contractual commitments.". AUA admits to a contractual obligation to there students per FERPA rules and regulations. Woodward, a student; AUA, aided by the court, has been deprived the rights to his own student records, per 42 U.S.C. 1983, Deprivation of Rights tort component per *[Fay v. South Colonie Cent. School Dist. 802 F.2d 21 – US Court of Appeals, 2nd Cir. 1986]*.

**iii)** AUA's Student Handbook contains contractual language.

(Dkt 128, pg 18) states **"The rules and regulations outlined here are binding"**;

(Dkt 128, pg 19) **"Privacy Rights"**, **"The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA):**

**1. The student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access."**

**2)** It is uncontested that Student Names, Grade Point Averages, GPA, and United States Medical Examination, USMLE, Step 1 scores that were disclosed, (Dkt 11, pg 6, pg 7-12, and pg 40 - 44). AUA disclosed private student information and used the Federal Courts to blame Woodward is palpable defense against the enjoined statements in Order (Dkt 185) and support his counterclaims.

**3)** Woodward's Defendant's Response to Docket 206 (Dkt 211) are palpable defends against Order (185) statements Woodward is enjoined from publishing and supports Woodward's Counterclaims (Dkt 193).

AUA violated Federal Law and the AUA Student Handbook.

The Fourteenth Amendment and 20 U.S.C. 1011a(a)(2)(D) and (E) guarantee no

**"discrimination"** and **"students should be treated equally and fairly"**

(Dkt 128, pg 19) **"Policy of Non-Discrimination"**,

"The University does not discriminate nor does it condone harassment based upon race, creed, ethnicity, religion, gender, national origin, age, disability, sexual orientation or any other characteristic protected by law."

Woodward's evidence produced and counterclaims prove discrimination, perjury, fraud, and false declarations were made during this case as well as during the Michigan case by AUA and others. These are grounds to overturn Michigan case judgments. *[U.S. v. Throckmorton, 98 US 61 Supreme Court 1878]*

The State of Michigan Court of Appeals judgment (Dkt 212-2, pg 39) states

"The memorandum described concerns regarding Woodward's demeanor and unprofessional conduct while at SJMO, stating in pertinent part: Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern. We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is to

22

enter. We encourage the faculty at AUA to review his entire record, to determine if he does not meet the qualifications to sit for the boards, and begin clinical rotations. The record documents numerous specific examples of Woodward's inappropriate conduct while at SJMO, including his demonstrated resentment of assignments, his completion of 100 patient logs in a mere two-week period"

are lies derived from the conspiracy between AUA and St Joseph Mercy Oakland

Hospital, the Grievance Committee Chair, William Cain, and Susan Zonia; palpable

defense against the permanent enjoined statements in Order (185). Woodward produced

evidence to support that Susan Zonia lied, committed perjury, fraud, conspiracy, and did

not have qualified privilege *[Havlik v. Johnson & Wales Univ. 509 F.3d 25 (2007)]*.

The email from J. Ernesto, AUA dean, to Susan Zonia, dated 12/15/2007 states (Dkt 212-

1, pg 4)

"Please read this note **from Dr. Cain. You need to write a request to start a Grievance procedure. If you would like, you could say that "According to instructions from VH and myself….."** That way you would not have this person in your Office complaining."

Susan Zonia admits she did not initiate the memo, AUA's deans requested the memo,

including the Chair of Grievances, W. Cain. (Dkt 212, pg 8, dep. pg 26)

"On Saturday December 15[th] **Dr. Ernesto Calderon sent me an email asking if I would write a memo** that said **according to instructions Dr. Hrehorovich and myself** and then write a summary of our impressions of Mr. Woodward. And then later that day a gentleman by the name of **Dr. Cain sent me a message again about Mr. Woodward and requesting a letter or a memo from me that states or summarizes our experiences**."

The memo (Dkt 212, pg 29) being quoted in State of Michigan Court of Appeals

judgment (Dkt 212-2, pg 39) states **"The memorandum"** demonstrates perjury and a

false declaration before the courts. Woodward provided palpable evidence to the court

concerning the perjury, fraud, conspiracy, and false declarations made by AUA and St

Joseph Mercy Oakland Hospital.

23

**A)** The Notice of Grievance Committee hearing (Dkt 212-1, pg 1) was written by

William Cain, AUA Faculty Grievance Committee Chair, who prejudged Woodward,

who requested the memo (Dkt 212-1, pg 3)

"**To me, the documents I have received are evidence of absurd behavior.** To proceed,

we need is a grievance statement (or request for grievance committee hearing)."

There was no Due Process by AUA, it was a headhunting party like prior committee

meetings. Woodward knew this so he filed a lawsuit against them.

**B)** Woodward produced palpable evidence; documents that Susan Zonia's fabricated

false evidence against Woodward. Susan Zonia's email sent **Oct 31, 2007** (Dkt 212-1,

pg 30) states

"I spoke with **Dr. Yanez**, and he said that Steve showed up **last Friday for lecture**. He

was uninterested, but physically present. Following our conversation **yesterday**, I paged

him**, to see if he was in-house at 2pm**. He did not return the page. **I paged him at 9am**

**and 10:30am today; he did not return the page.** Susan"

Note: None of the 5th Semester course documentation referred to the use of pagers;

especially not for any evaluation purposes.

**i)** The "Notice of Grievance Committee hearing" email dated Dec. 19, 2007 (Dkt 212-1,

pg 1, par 2, line 5) complaint against Woodward states "**failed to answer hospital**

**pages**", written two month later and two days before the end of the semester.

**ii)** The Schedule of Clinical Rotations (Dkt 212-1, pg 49) shows that Dr. Malloy and Dr.

Breitenbach were in charge of clinical instruction for Steven Woodward during the 5th

Semester. The Schedule of Clinical Rotations proves that as of Oct. 29, 2007 Woodward

would be at Dr. Breitenbach's "**Outpatient Clinic**" located in Waterford, Michigan.

**iii)** Susan Zonia's Oct. 31, 2007 email "Following our conversation **yesterday**, I paged him, to see if he was in-house" ("yesterday" being Oct. 30, 2007);  Woodward would not be "in-house" at St Joseph Mercy Oakland in Pontiac, Michigan on Oct. 30, 2007; but at Dr. Breitenbach's Waterford, Michigan Outpatient Clinic; in a different city; per AUA's and Susan Zonia's own program schedule.

**iv)** Susan Zonia's email sent Oct 31, 2007  (Dkt 212-1, pg 30) states " **I spoke with Dr. Yanez, and he said that Steve showed up last Friday for lecture.  He was uninterested, but physically present**."  The date "last Friday" would be Oct. 26, 2007.

**v)** The AUA Teaching Fees sheet (Dkt 212-1, pg 50) documents that Dr. Yanez did not lecture on Oct 26, 2007; Dr. Nicola and Dr. Khan were the instructors.

**C)** Woodward further demonstrates the, fraud, false declarations and lies in the Michigan Court Judgment per Susan Zonia's memo.  Woodward did not miss any clinical sessions and was an "**Outstanding**" and "**Excellent**" student.  Susan Zonia was not impartial.

**i)** Dr. Breitenbach's **Outpatient** evaluation for Steven Woodward (Dkt 212-2, pg 21) is documented proof that Woodward "**Attended all scheduled sessions**" rated an "A". This evaluation documents Woodward's Attitude, Learning Skills, Communication Skills, and Professionalism were scored "95"; equating to "**Outstanding**".

Dr. Breitenbach wrote "**Excellent Student**" (Dkt 212-2, pg 22).

**ii)** Dr. Malloy's **In-Patient** evaluation for Steven Woodward (Dkt 212-2, pg 23) is documented that Woodward "**Attended all scheduled sessions**" rated an "**A**", when Woodward was "**in-house**" at St. Joseph Mercy Oakland Hospital.

Dr. Malloy documented that Woodward's Attitude, Learning Skills, Communication Skills, and Professionalism score was "90"; equating to "**Outstanding**".

Woodward was an "**Outstanding**" student documented by the only two doctors that were in charge of evaluating him.

**iii)** Woodward's actual and documented clinical performance being "**Outstanding**" contradicting the Michigan Courts and Susan Zonia's memo (Dkt 212, pg 29, par 2) statement "**Mr. Woodward's lack of professionalism and poor communication skills**".

**iv)** Susan Zonia's statement "**his demonstrated resentment of assignments, his completion of 100 patient logs in a mere two-wee period**" is false. Susan Zonia committed perjury in her deposition stating (Dkt 212, pg 15, dep. pg 54, line 9)

"Q Did he ever see more than 100 patients?

A. No. **It's not just see a patient**. Like, "**Oh, look. There is one. There is one. There is one.**" **He was suppose to have substantive contact** and know the case and the diagnosis and be able to discuss it. And for someone who has just completed two years of basic science to be able to do 100 cases in two weeks I'm hard pressed having a resident that can do 100 cases in two weeks and these are people that are already licensed.

Q. Did you ever verify that that was, in fact, true that he completed 100 patient log in two weeks?

A. **He walked down a corridor and saw 100 patients**. That's not what the intent of the assignment was.

Q. How do you know that, because the instructor told you that?

A**. I know it's physically impossible for a student at that level to interview 100 patients in two weeks**."

Dr. Malloy's and Dr. Breitenbach's clinical evaluations for Woodward as

"**OUTSTANDING**" and "**EXCELANT STUDENT**" are proof Susan Zonia lied in both

her deposition and memo presented before the courts.  These evaluations were in her

SJMO Education Department, provided by SJMO doctors.  The Team Roster (Dkt 182,

pg 25) "**Every med student with * is observation ONLY**" Woodward was an

observation only student, without permission to chart, diagnose, touch, or even talk to a

patient without permission.  Woodward's patient log files (Dkt 212-2, pg 26-30),

Woodward blackened out, the dates, room numbers, and other information for HIPAA

patient privacy.

**v)** Susan Zonia's stated "**He was suppose to have substantive contact**" is false.

Woodward's patient contact was so limited he could not volunteer to clean up vomit.

(Dkt 212-2, pg 29, #69) "**I asked if I could help by cleaning the vomit off the pt and

was denied**."

**vi)** Susan Zonia knowingly lied under oath and in her memo presented to the courts

statements concerning Woodward's assignments and patient logs.  Explanation of the log

file (Dkt 212-2, pg 26-30):  Patient "1" was seen 9/13/2007; patient 100 was seen

10/22/2007.  New patients Woodward saw received an "Individual Number" (1-100).

The numbers written by hand on the left margin are the overall number of patients, not

individual, seen in one single day ( i.e. Woodward saw 5 patients on the first day and 7

on the second day).  The number of overall patients Woodward saw in two(2) weeks (ten

days) was (5, 7, 2, 3, 4, 7, 9, 6, 4, 9 = **56** [and only 33 separate individual patients]; NOT

**100**)  Susan Zonia lied in her deposition and memo.  Susan Zonia knew she was lying;

she demanded student patient log files weekly. The email from Susan Zonia via Deneen

Nicks (Dkt 182, pg 27) states

"All 5[th] Semester Students need to **provide me weekly** with a copy of their **patient encounters**/logs. It would be best if they were turned in to Deneen by noon on Thursday for me to review and then send to Dr. Calderon."

Susan Zonia knew she was lying about Woodward patient log files in her deposition and memo presented before the Michigan Courts. Woodward's daily patient logs (5, 7, 2, 3, 4, 7, 9, 6, 4, 9, 12, 17, 6, 13, 6, 15, 9, 6, 4, 5, 8, 9, 2, and 6) is far from being "**physically impossible**" as sworn by Susan Zonia. It took Woodward from 9/13 until 10/22, over a month to complete the assignment of seeing 100 patients. Woodward having emergency patient care experience, e.g. being a Firefighter (Dkt 182, pg 33-34) documenting patient observations was a rudimentary task. The task could not have been considered "**impossible**" since following semester requirements increased by 50%.

(Dkt 212-2, pg 15, dep pg 20,line 17)

"Q. **Now, you said 150 patient log**, The memo says, 100 patient log. Why is there a difference, if you know?

A. It has changed a lot so I'm not 100 percent sure if his group was 100 or groups after him." Woodward being in the first group.

**vii)** Susan Zonia lied in her deposition and on her memo stating (Dkt 212, pg 29, line 12) "**not argue with faculty at St.Joseph Mercy Oakland**".

Woodward did not argue with anyone at St. Joseph Mercy Oakland, he was Outstanding. In her deposition she stated (Dkt 212, pg 16, dep. pg 58)

"Q. **And what faculty at St. Joe did he argue with**?

A. **Dr. Yanez**.

Q. Anybody else?

A. **Not that I am aware of**."

Dr. Yanez denied that Woodward argued with him (Dkt 212-1, pg 45,dep. pg. 37)

"Q. So it sounds to me like **you disagree with the word "arguing"** that he was just expressing his concerns in what you deemed to be an inappropriate manner?

A. **Yes**"

Woodward was a victim vindictive AUA and SJMO administrators.

**viii)** Susan Zonia was terminated from SJMO in 2010 (Dkt 211, pg 40) creating a "hostile environment".  According to (Dkt 211-1, pg 11) "Summary of GME Staff Complaints About Susan Zonia " says F word a lot", "untouchable", "belittles staff", "inappropriate conversations about Zonia's sex life", says "blow jobs",  "bitch", "ass", "bastards", "Says she likes to create and atmosphere of fear", "Said to throw away all the crucifixes", "Says people who believe in God are stupid" at St Joseph Mercy Oakland Hospital.

AUA's and the Michigan Court's declarations before the Federal Court (Dkt 177, pg 3) "Woodward's conduct at AUA was replete with instances of unprofessional behavior", "Woodward was a poor student, with only a 1.5 grade-point average", "AUA did not deny Woodward due process", "AUA had sufficient grounds to dismiss Woodward based on his "poor academic performance and unprofessional conduct", "No express of implied contract existed between AUA and Woodward", "AUA did not invade Woodward's privacy", "Neither Zonia nor Trinity tortuously interfered with Woodward's contract as none existed", "The statements in Zonia's memo were accurate and made in good faith" are false declarations.

**D)** AUA uses Committee Meetings as a weapon to discredit and eliminate students that criticize AUA. Federal Court Case No. 10-cv-10978, and the Michigan Case are palpable evidence to support Woodward's defense as justification for Counterclaims and against the permanently enjoined statements of Order (185).

Judge Duggan's (Dkt 206, pg 1) verifies "("AUA") filed this lawsuit against Defendant Steven L. Woodward ("Woodward"), seeking to quiet his complaints about AUA and shut down his Internet website"; likewise AUA used committee meetings to "quiet his complaints about AUA".

 Michigan Court Case (Dkt 212-2, pg 40, line 1) **"statements that the program constituted a waste of time and he wished to transfer"** from Susan Zonia's memo (Dkt 212, pg 29, line 7) **"saying that the V Semester was a waste of time"**.

**i)** The AUA Student Handbook states

 **"AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans."**

**ii)** The First Amendment and Federal Law 20 U.S.C. 1011a(a) "Protection of rights" protects freedom of student speech.

*"students should not be intimidated, harassed, discouraged from speaking out, or discriminated against"*

AUA, SJMO, and the courts have violated the contractual obligation in the Student Handbook and Woodward's Civil Rights and Federal Laws 20 U.S.C. 1011a, 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C 1983, and 42 U.S.C. 1985.

Woodward made statements that were verifiably true according to other students e.g. Vasanth Jayaraman (Dkt 180-1, pg 31) **"School has been a waste of time I feel. Goin to**

**hospital has been fun some weeks and pointless other weeks**." and "**Yeah we did sign a petition**".  Ref 12-1128 pg 26 documents how the students at SJMO were cheated out and defrauded of 66% of the clinical rotations.  Woodward paid about $12,000.00 (not including approx. $6,000 for relocation and living expenses) for the semester and received only two(2) of six(6) clinical rotations would be a "waste of time" according to the AUA and SJMO contract.  Ref 12-1128, pg 32, sec D "**AUA's online testing application did not work for five consecutive days.  Woodward used his time to help AUA troubleshoot their testing software**" verified by emails (Dkt 212-1, pg 23) "**Please recheck my account, I just checked the URL you gave me and I still can't login, same error**" and (Dkt 212-1, pg 29) "**We couldn't use our computers again today to take our quiz.**" justifying Woodward's "waste of time" helping AUA troubleshooting their junk.  The testing application "ExamMaster" was so bad AUA replaced it with Scholar360 the week prior to the final exam.

**E)** The Michigan Courts (Federal and State) aided in destroying Steven Woodward personally, professionally, and academically to protect AUA and St Joseph Mercy Oakland Hospital from Civil Rights violations, perjury, lies, fraud, and false declarations. The Judicial Balance being so biased against Woodward labeling and documenting him as "unprofessional" for alleged missing "pages" and misconduct from a memo written by a verifiable liar, Susan Zonia.  The bias is undeniable; comparing Woodward's professionalism to the model of ethics, AUA, a Medical College; including but not limited to:

**i)** AUA violating Federal Law and their own Student Handbook including but not limited to: Disclosing student records, then blames a student, Woodward, in order to defraud

31

federal financial institutions and protect their reputation; Refusing to produce Student Records.

**ii)** AUA lying to the courts and students

**iii)** AUA's attempt to cover-up the sexual assault of a student by filing false claims against a student, Woodward, disregarding The Clery Act, Fed. Law and student safety for profit and reputation;

**iv)** AUA issuing worthless diplomas;

**vii)** AUA denying and conspiring to violate Civil Right Due Process, Freedom of speech, and fraud

**viii)** Falsifying student grades (described Ref 12-1128) and more

Woodward's Rights of Due Process, First and Fourteenth Amendment Rights, guaranteed by Federal Law 20 U.S.C. 1011a, have been violated by AUA, SJMO, and the courts.

**c)** Woodard emergency motion for leave to file a motion to dismiss (Doc. 198) does contain palpable defense and reasons for dismissal of AUA's claims in full.

Woodward states (Dkt 198, pg 2)

**"The Defendant, Steven Woodward, will prove that according to the Plaintiff own documentation and testimony before the Court in conjunction with testimony and documentation by the Honorable United States Federal Judge Patrict J. Duggan; Neal Simon, an Officer of the Court, and president of a Medical School, has committed perjury, made False Declarations before the United States Federal Court, and committed obstruction."**

Woodward produced evidence (Ref 12-1128) violations that should resulted in the dismissal of AUA's claims for violations including: refusing to respond to court orders, lying before the court, refusing to produce FRCP 34 discovery(fail to defend), and failure to answer FRCP 36 Request for Admissions in Good Faith.

**12-1585 Appeal of Permanent Injunction (per Docket 218 NOA)**

Woodward's understanding of U.S. Court of Appeals for the Sixth Circuit's Order (Dkt

213) is to file Notice of Appeal (Docket 218) against the Districts Court's ruling of

Summary Judgment (Docket 185) being **"Appeal will be held in Abeyance"**.

Woodward fully intended to appeal both the Permanent Injunction (Dkt 185) and Final

Judgment (Dkt 221) against him (Ref. 12-1128.) and Notice of Appeal (Dkt 200).

Judge Duggan gave Woodward permission to appeal to the Appellate Court.


**12-1738 Notice of Appeal (Docket 222) Final Judgment (Docket 221)**

The Final Judgment (Docket 221) should be overturned based on "Fraud on the Court",

prejudgment, bias, lying, and denial of Civil Rights of Due Process, Fourteenth

Amendment  against Woodward by Judge Duggan.  Judge Duggan should have

automatically disqualified himself prior to filing Order (Dkt 185)  Judge Duggan's bias

can be traced back to April 19, 2010 knowing AUA's claims were ridiculous, without

merit, and that alleged defamation statements were lies by AUA; Woodward's statements

were in fact true..  The court allowed AUA to file, under the penalty of perjury, Request

for Clerk's Entry of Default, (Dkt 13) filed 7/13/2010, knowing Woodward traveled from

abroad and defended against these claims, but did not set-aside this False Declaration

until 10/06/2010;  granting adjournment to stall the case.  Woodward believes the court

did this to await a known corrupted ruling in Michigan case dated January 13, 2011,

barring Woodward via collateral estoppel or res judicata as stated in Opinion (Dkt 184,

pg 22) and Order (Dkt 206, pg 4) "Woodward's proposed counterclaims are futile as he seeks to litigate issues already decided in his state law case against AUA and others"

**Judge Duggan:** (also described in Ref 12-1128)

**a)** Imprisoned Woodward for defending False Statements in Court Opinion (Docket 184) made by Judge Duggan intended to cover-up perjury by Neal Simon.

**b)** Assigned a Pro Bono Attorney to Woodward in order to question him after multiple depositions. The Pro Bono Attorney admitting to refusal to defend Woodward.

**c)** Writing Orders knowing Woodward could not comply.

**d)** Refusing to perform judicial duty to Order AUA to production of Woodward's Student Records guaranteed by Federal Law.

**e)** Writing conflicting Orders to protect AUA,

**f)** Allowing AUA to violate Federal Rules of Civil Procedure, such as allowing AUA to produce documentation in motions and hearings when they are barred from producing because they refused to produce any FRCP 36 discovery by the close of discovery.

**g)** Prejudged Woodward.

*([Bulloch v. US, 763 F.2d 1115, 1121 (10th Cir. 1985)]*

*"Where the judge has not performed his judicial function-thus where the impartial functions of the court have been directly corrupt")*

*([Kenner v. CIR, 387 F.2d 689 Court of Appeals, 7th Cir. 1968] "it can be reasoned that a decision produced by fraud on the court is not in essence a decision at all, and never becomes final")*

*([Liljeberg v. Health Services Acquisition Corp. 486 US 847 Supreme Court]*

Case: 12-1128     Document: 36     Filed: 07/23/2012     Page: 36

*"Moreover, although the judgment in question had become final, the Court of Appeals determined that under the facts of this case, the appropriate remedy was to vacate the court's judgment. We grant certiorari to consider its construction of 455(a) as well as its remedial decision. 480 US 915", "Federal Rule of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment. In particular, Rule 60(b)(6), upon which respondent relies, grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just'"*)

Upon the Court of Appeals ruling in favor of Woodward, that Judge Duggan has acted with bias and was required to automatically disqualified himself per title 28 U.S.C. 455(a), the Appellate Court must consider reversing Judge Duggan's Orders permanently enjoining Woodward's statements.

*[U.S. v. Sciuto 531 F.2d 842 Court of Appeals, 7th Cir.]* the judge *"must disqualify himself"*, *"he will be required to disqualify himself"*, and *"the order .(order)must be reversed and the case be remanded for a new hearing before another judge"*.)

If a judge acts after he has been automatically disqualified by law, then he is acting without jurisdiction, and that suggests that he is then engaged in criminal acts of treason, and may be engaged in extortion and the interference with interstate commerce. (*Ref. "Fraud on the Court by an Officer of the Court" and "Disqualification of Judges, State and Federal" [http:www.ballew.com/bob/htm/fotc.htm]*)
"Jurisdiction is vested in the courts, not in judges" *[People v. Zajic]*

Judge Duggan lied in his Opinions (Dkt 184), to cover-up perjury committed by AUA (Neal Simon). The Supreme Court has stated, "false testimony is intolerable" *[Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010]*

Judge Duggan being found bias are grounds conspiracy, accessory, violation of Civil Rights, Tort/Contract Law, Federal Laws, and Obstruction for failing to demand the production of Woodward's student records, educational property, proof of education.

**Authorities**

*(28 U.S.C. 455(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned")*

*(20 U.S.C. 1011a(a) Protection of rights*

*(1) It is the sense of Congress that no student attending an institution of higher education on a full- or part-time basis should, on the basis of participation in protected speech or protected association, be excluded from participation in, be denied the benefits of, or be subjected to discrimination or official sanction under any education program, activity, or division of the institution directly or indirectly receiving financial assistance under this chapter and part C of subchapter I of chapter 34 of title 42, whether or not such program, activity, or division is sponsored or officially sanctioned by the institution.*

*(2) It is the sense of Congress that—*

*(A) the diversity of institutions and educational missions is one of the key strengths of American higher education;*

*(B) individual institutions of higher education have different missions and each institution should design its academic program in accordance with its educational goals;*

*(C) an institution of higher education should facilitate the free and open exchange of ideas;*

*(D) students should not be intimidated, harassed, discouraged from speaking out, or discriminated against;*

*(E) students should be treated equally and fairly; and*

(F) nothing in this paragraph shall be construed to modify, change, or infringe upon any constitutionally protected religious liberty, freedom, expression, or association.

*(b) Construction*

*Nothing in this section shall be construed—*

*(1) to discourage the imposition of an official sanction on a student that has willfully participated in the disruption or attempted disruption of a lecture, class, speech, presentation, or performance made or scheduled to be made under the auspices of the institution of higher education, provided that the imposition of such sanction is done objectively and fairly; or )*

*(Constitution provides that no State shall deprive any person of life, liberty or property without due process of law.)*

**([Arnstein v. Porter, 154 F.2d 464, 468, 2d Cir 1946]** *"summary judgment must be denied when "there is the slightest doubt as to the facts", "Of course it is error to deny trial when there is a genuine dispute of facts")*

**([Farrington v. Bureau of Nat. Affairs, 596 A. 2d 58 –DC; Court of Appeals]** *"defamation claim was precluded by the defense of consent")*

**([Bulloch v. US, 763 F.2d 1115, 1121 (10th Cir. 1985)]** *"Fraud on the court" is fraud which is directed to the judicial machinery itself", "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases"),(it has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court{ref. omitted}. It is thus fraud where the court or a member is corrupted of influenced or influence is attempted or*

*where the judge has not performed his judicial function-thus where the impartial*

*functions of the court have been directly corrupted.)*

**([David v. Caterpillar, Inc. 324 F.3d 851(2003), No. 02-1354 US Court of Appeals, 7th**

**Cir.]** *"the sanctions of exclusion is automatic and mandatory")*

**([Eastway Const. v. City of New York, 762 F.2d 243 Court of Appeals 2nd Cir. 1985]**

*"subjective good faith no longer provides the safe harbor it once did", "subjective bad*

*faith is no longer required to trigger the sanctions imposed by the rule, sanctions shall be*

*imposed")*

**([Fay v. South Colonie Cent. School Dist. 802 F.2d 21 – US Court of Appeals, 2nd Cir.**

**1986]***"The district court partially granted the plaintiffs' summary judgment motion,*

*holding the school district liable under 42 U.S.C. 1983 (1982) for denying Robert Fay*

*access to his children's educational records, see 20 U.S.C. 1232g(a)(1)(A)(1982),*

*awarding nominal damages for the denial of access to the records", "A section 1983*

*violation is a species of tort liability in which the level of damages is determined by*

*applying principles derived from tort law", "His FERPA claim is remanded for further*

*proceedings to determine the amount of compensatory damages." )*

**([Fellheimer v. Middlebury College, 869 F. Supp. 238 – Dist Court, D. Vermont 1994]**

*"Merrow v. Goldberg, 672 F.Supp. 766, 774 (D. Vt 1987)(Billings, J.) found that*

*"[b]etween a student and a college there is a relationship that is contractual in*

*nature"(diting Wilson v. Illinois Benedicline College, 112 Ill. App. 3d 932, 68 Ill. Dec.*

*257, 262, 445 N.E. 2d 901, 906 (1983)", "Based on the language of the above cases, as*

*well as Merrow, the Court finds that there is no legal bar to the plaintiff's breach of*

*contract action based on the terms of the College Handbook.")*

*[Hadley v. US 45 F.3d 1345 Court of Appeals, 9th Cir 1995] "must not be prejudiced")*

*[Havlik v. Johnson & Wales Univ. 509 F.3d 25 (2007)] "a qualified privilege is not a jujube that, like some magical charm, wards off liability for defamation, come what may...if the plaintiff proves that the privilege-holder published the offending statement out of spite, ill will, or malice")*

*[Kenner v. CIR, 387 F. 2d 689 Court of Appeals, 7th Cir. 1968] "Fraud upon he court should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudications", "it can be reasoned that a decision produced by fraud on the court is not in essence a decision at all, and never becomes final.")*

*[Levine v. U.S., 362 US 610 –Supreme Court 1960] "Justice must satisfy the appearance of justice")*

*[Liljeberg v. Health Services Acquisition Corp. 486 US 847 Supreme Court] "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned", "455(a) is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality, notwithstanding a finding that the judge was not actually conscious of those circumstances. Moreover, although the judgment in question had become final, the Court of Appeals determined that under the facts of this case, the appropriate remedy was to vacate the court's judgment. We grant certiorari to consider its construction of 455(a) as well as its remedial decision. 480 US 915.", "455(a) can be violated based on*

*an appearance of partiality, even though the judge was not conscious of the circumstances creating the appearance of impropriety, and second, whether relief is available under Rule 60(b) when such a violation is not discovered until after the judgment has become final.", "Federal Rule of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment. In particular, Rule 60(b)(6), upon which respondent relies, grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just")*

***([Liteky v. US, 510 US 540 Supreme Court 1994]*** *"A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment", "455(a) proscribes all partiality, not merely the "personal" sort", "Federal appellate courts' ability to assign a case to a different judge on remand rests not on the recusal statute alone, but on the appellate courts' statutory power to "require such further proceedings to be had as may be just under the circumstances" 28 U.S.C. 2106", "455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.", "455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings.", "455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.", "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a*

*judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified.", "Justice should not only be done, but should manifestly and undoubtedly be seen to be done")*

*([Mangla v. Brown Univ. 135 F.3d 80.83(1ˢᵗ Cir. 1998] "contracts contain an implied duty of good faith and fair dealing")*

*([Parraway v. Andrews University, 50 BR 316 – Dist. Court, WD Michigan 1984]*
*"Accordingly, an order will be entered ordering Defendant to release Plaintiffs' academic transcripts upon payment of the customary processing fees.")*

*([People v. Zajic, 410 NE 2d 626 – Ill: Appellate Court, 2ⁿᵈ Dist. 1980] "jurisdiction is vested in the courts, not in judges")*

*([Pfizer Inc. v. Lord, 45 F.2d 532 – Court of Appeals, 8ᵗʰ Cir. 1972] "the interest of justice, "the right to be tried before an unbiased judge is also basic in our judicial system", "It is important that the litigant not only actually receive justice, but that he believe that he has received justice. A judge, like Caesar's wife, should be above suspicion.")*

*([Radecki v. Glaxosmithkline, No. 09-3901-cv US Court of Appeals, Second Cir. 2010]*
*"dismiss with prejudice as a sanction for perjury", "As the Supreme Court has stated, "false testimony in a formal proceeding is intolerable" and therefore "perjury should be severely sanctioned in appropriate cases")*

*([Ross v. Creighton University, 957 F.2d 410-Court of Appeals 7ᵗʰ Cir. 1992] "basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract")*

Case: 12-1128    Document: 36    Filed: 07/23/2012    Page: 44

*([Salgado v. Gen. Motors Corp, 150 F.3d 735, 742(7th Cir 1998)]* "failed to comply with court's deadline for the submission", "without a case", "shall not, unless such failure is harmless, be permitted to use as evidence at a trail, at a hearing, or on a motion any witness or information not so disclosed")*

*([Scozzari v. City of Clare, 723 F. Supp. 2d 974 ( E.D. Mich. 2010)]* "a palpable defect by which the court and the parties [were] misled...[and] that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "A palpable defect' is a defect that is obvious, clear, unmistakable, manifest or plain.")*

*([Taylor v. O'Grady, 888 F.2d 1189 Court of Appeals, 7th Circuit, 1989]* "455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself sua sponte under the stated circumstances")*      .

*([U.S. v. Balistrieri, 779F.2d 1191 – Court of Appeals, 7th Cir.]* "We think that this language imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed", "Section 455(b)(1) requires disqualification when the judge has a personal bias", "personal bias or prejudice", "455(b)(1) is directed to the judge and is self-executing. It requires the judge to disqualify himself if he has a personal bias or prejudice concerning a party. We think that this language imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed", "it should be required only when the bias or prejudice is proved by compelling evidence", "Section 455(a) is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process", "It is directed against the appearance of partiality, whether or not the judge is actually biased", "unless an error affects the substantial rights of the appellant", "We would hesitate to hold that the denial of a motion to disqualify under*

*455(a) is never reversible error if the moving party would be left with no recourse when a judge denies such a motion. We would be depriving ourselves of any means of supervising the administration of 455(a) in the district courts", "we hold that when a judge denies a motion to disqualify himself under 455(a), the moving party's sole recourse is to apply to this court immediately for a writ of mandamus."*)

**([U.S. v. Sciuto 531 F. 2d 842 Court of Appeals, 7th Cir.]** *"The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause", "If information in a report unavoidably causes him to prejudge an issue of fact bearing on revocation, he must disqualify himself", "he will be required to disqualify himself unless he has refrained from prejudgment", "Because the record in this case shows that the District Court prejudged an issue on which he decision to revoke probation may have turned, the order revoking probation must be reversed and the case remanded for a new hearing before another judge")*

**([U.S. v. Throckmorton, 98 US 61 Supreme Court 1878]** *"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments", "Fraud vitiates every thing, and a judgment equally with a contract; that is, a judgment obtained directly by fraud", "New matter in some cases be ground for relief, but it must not be what was tried before; nor, when it consists in swearing only, will I ever grant a new trial, unless it appears by deeds, or writing, or that a witness on whose testimony the verdict was given was convicted of perjury, or the jury attained", "The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible")*

44

## <u>Certificate of Word Count</u>

Mr. Woodward Certifies that the Word Count of "<u>**Appellant Brief Case Nos. 12-**</u>
<u>**1128/12-1584/12-1585/12-1738**</u>" is: <u>**11,680**</u>

Microsoft Office Word 2003

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810)235-7267

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing **<u>Appellant Brief Case Nos. 12-1128/12-</u>**

**<u>1584/12-1585/12-1738</u>** and this Certificate of Service were served upon Plaintiff by U.S.

mail to American University of Antigua, via council, Eric A. Buikema (P58379), 322

West Lincoln Ave, Royal Oak, Michigan 48067


Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810)235-7267

1

**PRIORITY MAIL**

**UNITED STATES POSTAL SERVICE**

PLEASE PRESS FIRMLY

U.S. POSTAGE

$5.90

Flat Rate Mailing Envelope

Visit us at usps.com

United States Postal Service®
**DELIVERY CONFIRMATION™**



0311 2550 0000 6903 4890

PS00001035114

TRY CLICK-N-SHIP!
• Skip the trip to the Post Office
• Print your shipping labels &
• Save up to 16% on postage
• Built-in Tracking
• Free Package Pickup
cns.usps.com/go



Please Recycle

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F-P-CNS © U.S. Postal Service; June 2012; All rights reserved.

EP14F-P-CNS June 2012 © U.S. Postal Service

Schedule package pickup right from your home or office at usps.com/pickup
Print postage online

From/Expéditeur:
Steven Woodward
7211 Brittwood Ln
Flint, Mich. 48507

To/Destinataire:
United States Court of Appeals
For the Sixth Circuit
100 East Fifth Street, Room 540
Potter Stewart U.S. Courthouse
Cincinnati, Ohio 45202-3988

Country of Destination/Pays de destination:
Attn. Linda Niesen

