**RECEIVED**

SEP 2 4 2012

**DEBORAH S. HUNT, Clerk**

Case No. 12-1128/12-1584/12-1585/12-1738

**United States Court Of Appeals For The Sixth Circuit**

**American University of Antigua College Of Medicine**

**Plaintiff-Appellee,**

**v.**

**Steven Woodward,**

**Defendant-Appellant.**

**Appellant Reply to Appellee Brief Case Nos. 12-1128/12-1584/12-1585/12-1738**

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

9/21/12

Case: 12-1128     Document: 45     Filed: 09/24/2012     Page: 1

1

**Table of content:**

1. Appellant Reply to Appellee Brief Case Nos. 12-1128/12-1584/12-1585/12-1738

2. Exhibit A. AUA "Faculty & Administration" www.auamed.com, (Notarized)

3. Exhibit B. "Fifth Semester – Preliminary Clinical Medicine" Guidelines

4. Certificate of Word Count

5. Certificate of Service

Case: 12-1128    Document: 45    Filed: 09/24/2012    Page: 2

The courts in Michigan are protecting American University of Antigua, AUA and St Joseph Mercy Oakland Hospital, SJMO; violating Woodward's Civil Rights: Due Process, First Amendment, and Fourteenth Amendment. The courts are aiding AUA to violate of Federal Laws and publishing defamatory lies about Woodward. Woodward's statements the district court has enjoined him from stating are **true**.

Woodward has endured "manifest injustice" from every court bench in Michigan.


**a.** The corruption in the district court is overwhelming. The court appointed a Pro Bono attorney to Woodward that represents AUA's business partner, St Joseph Mercy Oakland Hospital, SJMO, named in Docket 1 of case no. 2:10-cv-10978 and the Michigan case. The Pro Bono attorney admitted they <u>would not</u> defend Woodward (Dkt 211, pg 30).

**1.** The Court recommended Woodward request a Pro Bono attorney to aid in discovery (Dkt 205, pg 2, ln 12; **12/22/2010**), Granted (Dkt 89, **1/5/2011**) the attorney to be assigned <u>within 90 days</u>. The Pro Bono attorney was assigned (Dkt 160) **seven months** after the request and **three months** after the close of discovery **4/11/2011** (Dkt 94).

**2.** The Pro Bono attorney met with Woodward to depose him under the guise of attorney confidence and tried to have Woodward sign the case over to his firm.

**3.** The court scheduled a hearing, 8/11/2011 to intimidate and bully Woodward into accepting an attorney that worked for AUA's partner and refused to defend Woodward.

**4.** The court would not schedule hearings for Woodward's motions to defend against AUA: claims, perjury, dismissal, violation of court orders, or discovery violations. The court is bias and used the Pro Bono attorney as a scheme to defraud Woodward.

**b.** The court allowed AUA to violate basic and automatic Federal Rule of Civil Procedure, FCRP.  AUA refused to file a "Corporate Disclosure Statement" per FRCP 7.1(b)(1); supporting the disqualification of Judge Duggan and Judge Hluchaniuk.  FRCP 7.1(a)(1) "identifies any parent corporation" and is to be filed during the first appearance. Judge Duggan and Judge Hluchaniuk allowed AUA to violate discovery FRCP; violate court order (Dkt 124), violate Federal Laws including 20 USC 1232g and 20 USC 1011a, and Woodward's Civil Rights.

**1.** Woodward's motion (Dkt 51, pg 5)

"(7) Violation of Federal Rule 7.1 Disclosure Statement.  The Plaintiff has failed to release parent company information.  The Defendant has evidence that American University of Antigua College of Medicine has associated with Manipal Education (Exhibit 16) and Greater Caribbean Learning Resources, GCLR incorporated in New York, NY (Exhibit 17)."

**A.** Exhibit 16 (Dkt 51, pg 47) "**Manipal Education has acquired the entire shareholding of American University of Antigua (AUA)**"

**B.** Exhibit 17 (Dkt 51, pg 48) "Greater Caribbean Learning Resources, Inc., American Univ. Antigua College 501 5th Avenue New York, NY."

**C.** AUA's Website (Dkt 51, pg 16) "American University of Antigua C/O GCLR, LLC | 2 Wall St, 10th Floor| New York, NY

**D.** AUA's Website (Dkt 51, pg 21) New York Administrative Office. c/o GCLR, LLC

**E.** Website "www.auamed.org" belongs to GCLR. LLC **not** AUA (Dkt 156-2, pg 49)

**2.** During the Dec. 22, 2010 hearing Woodward brought FRCP 7.1 violation before Judge Hluchaniuk (Dkt 205, pg 26) Woodward "**What do I have to do to get him to supply me Rule 7.1 information that he's supposed to supply me during the April 19th hearing? That's, I mean that's automatic.**"

Judge Hluchaniuk: "**It's not discovery. It's an obligation that the parties have in litigation to file a certificate of corporate affiliations. I, my review of the record suggests that he did not do that. He, the Plaintiff, did not do that.**"

to no avail and without remedy.

**3.** The court refuses Woodward access to his own student records, which were requested Nov. 22, 2010, by FRCP 34 Producing Documents (Dkt 121, pg 3). The court denied Woodward's attempts to access his own student records per Orders (Dkt 174, Dkt 186, Dkt 206, and Dkt 221). Refusing Woodward his student records violates Federal Law; Family Educational Rights and Privacy Act, FERPA, 20 U.S.C. 1232(g). AUA admits FERPA "**RIGHTS**" (Dkt 1, pg 9, #50). AUA admits to an FERPA contract with their students during the April 19, 2010 hearing; AUA accusing Woodward of "**tortuous interference**" (Dkt 19, pg 13, ln 11). AUA publish in their Student Handbook (Dkt 212-3, pg 20) "The student has the **right** to inspect and review his educational record within 45 days of the University's receiving a written request for access." Proving Woodward's statements are **true** (Enjoined Dkt 221), court bias, and supports Woodward's counterclaims.

**4.** In Case No. 2:10-cv-10978 AUA sued Woodward, a student (Dkt 1, pg 9) Count III, for exposing AUA's disclosure of private information of over 150 students (Dkt 11, pg 7). These records were disclosed during the 5th Semester at SJMO. AUA admittedly

violated Federal Law, FERPA, 20 U.S.C. 1232(g) private student rights and contractual obligation per the AUA Student Handbook (Dkt 212-3, pg 20) **"The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA)."**

**A.** AUA and Oakland County Court violated, FERPA, against Woodward releasing to the public "his master program password" (Dkt 212-2, pg 33) (actually Woodward's username) and Woodward's Rights guaranteed per 20 USC 1011a.

**B.** AUA released the 5th Semester Final Grades, including Woodward's student grades (Dkt 11, pg 6 and Dkt 212-2, pg 5).

**c.** It is impossible to determine Woodward's Grade Point Average, GPA. Federal Law 20 U.S.C. 1011A(a)(1) guarantees (E) students should be treated equally and fairly. (D) students should not be …discriminated against. AUA's Student Handbook (Dkt 212-3, pg 20) "Policy of Non-Discrimination" and an implied contract of fair grading contract by any University. Woodward passed the Final Exam according to the AUA written contracts, but AUA failed Woodward. Woodward filed a lawsuit against AUA Dec. 20, 2007, the 5th Semester ended Dec. 21, 2007, and the Final Grades were not released until Jan. 2008. AUA forged documents and made false declarations to district courts (now the appellate court), Michigan and County courts concerning Woodward grades. Woodward file the lawsuit since AUA committee meeting and appeal processes do not work. AUA's processes are used as weapons to defraud and silence Woodward.

**1.** Dr. Jeffrey Yanez was an AUA faculty, and the AUA 5th Semester Program Director at SJMO (AUA timesheet Dkt 212-1, pg 50, Exhibit A). Dr. Yanez had authority over the final exam curve; proving AUA made False Statements on the Final Grades.

**A.** The Final Grades (Dkt 172, pg 44) prove AUA lied and forged Woodward's grades. Note (3) "**Failed Final Exam. Did take remedial and failed**" is a FALSE statement. AUA's computer testing program "Exam Master" did not work so AUA changed to "Scholar360" the week prior to the Final Exam. Scholar360 did not work either.

**B.** Dr. Yanez wrote each student at SJMO (Dkt 172, pg 46) dated Wed. 5 Dec. 2007, "Please log onto scholar360 and set up your account before this Fridays final exam", "**AUA and myself are eating a little crow**. The Exam Master <u>results sent out last week were NOT correct</u>" and

"**For the final exam** Friday. If you encounter a question that is "**messed up**" for any reason just skip it and move on. I will give you credit for any question that is not complete. There may be 8 out of 800, therefore, **I will give you a 1% bonus**."

**C.** Dr. Yanez wrote Woodward (Dkt 172, pg 47) "Due to <u>**testing irregularities, AUA will allow you a retake on the Vocabulary section**</u>".

**D.** Dr. Yanez's deposition about Woodward's Final Exam states (Dkt 212-1, pg 42, dep pg 24, ln 7) "**There was some problem with his electronic version of the exam** and they did allow him a retake."

**E.** Dr. Yanez wrote to Woodward (Dkt 172, pg 47). "You will need a total score of **560 out of 800**. 80% (640 questions) less the **10% curve** = 560 questions."

**F.** Woodward received an **88% out of 100** on the Vocabulary section that was "**messed up**" and had an overall final exam score of **<u>568</u>** (Dkt 172, pg 48)

Woodward passed the Final Exam. AUA's note (3) **"Did take remedial and failed"** is a known lie and False Statement.

**2.** Woodward passed the Final Exam.

AUA broke their contract with each student, not applying the 10% curve, discriminated against Woodward, and falsified Woodward grades. Even with the 4% curve, AUA discriminated against Woodward (Dkt 172, pg 44) passing Lakedra Evans(student 6) with a <u>77%</u> Final Exam grade but failing Woodward(student 7) with a <u>75%</u>.

**3.** The Fifth Semester Syllabus, a contract, (Dkt 212, pg 45-46) defined the 5th Semester Grading policy in III. Evaluation and Grading: "A) Passing Grade Minimal requirements" and "B) Components included in Grade Calculation". AUA discriminated against Woodward(student 7), Evans(student 6), and Ozuomba(student 3).

AUA passed students (Dkt 172, pg 44) labeled 1, 2, 4, 8, 9 and 10; each of these students failed the 5th Semester course per the Syllabus requirements.

**4.** AUA violated 20 USC 1011a(a)(2)(E), written and implied contracts of fair grading.

**A.** Simple addition, with the 4% curve, clearly shows AUA falsified student grades and unfairly graded students. Nico Kristen(student 10) only earned an **actual 78.3** score, AUA passed Mr. Kristen with a forged **83** and "**B**" letter grade (Dkt 172, pg 44)

$[10.0 + 5.0 + 0.0 + 5.0 + 10.0 + 23.9 + 16.4 + 8.0 = \textbf{78.3} \text{ NOT } \textbf{83}]$

**i.** The 5th Semester Syllabus states (Dkt 212, pg 46) "**Minimal Out-patient session attendance 90%**". Nico Kristen failed the Out-patient requirement per the Syllabus. The unfair treatment by AUA was premeditated, proven by note (4) (Dkt 172, pg 44) "**Did not take OP rotation. Total score /95**" AUA knew Kristen failed.

**ii.** Kristen's actual grade **78.3** is lower than Jayadeep(student 2) 80.4/C, Evans(student 6) 81.3/C-, and Woodward(student 7) **79.4/F**.  AUA discriminates, cheats, commits fraud, falsifies student grades, and knowingly makes false declarations before the courts.

**B.** AUA passed Vishal Chheda (student 4) who failed three requirements per the Syllabus: Attendence, Prac. Session, and Practical Exam.  The Syllabus required an **80%** to pass the Practical Exam; Chheda only earned a **75%**; but unfairly AUA passed them.

**5.** AUA falsified Woodward's final grades so they could make false declarations before the courts such as Woodward having only a 1.5 GPA and (Dkt 156-2, pg 16) "Woodward took and failed the fifth semester Final Exam", "Woodward received an "F" for the fifth semester", (Dkt 156-2, pg 17) "**washed out**" of the fifth semester.  AUA's own docket (Dkt 156-2, pg 16) states "Woodward claims he actually passed the final exam".

**6.** AUA disclosed the 5th Semester Final Grades.  According to Judge Duggan's orders Woodward is innocent of AUA Docket 1, Count III violation of FERPA.

**Woodward being innocent** of FERPA violations continued to publish the Final Grades. Judge Duggan held Woodward in Contempt (Dkt 199, pg 12, ln 9) for doing so. Judge Duggan's orders contradict each other, are not narrowly defined, and Woodward's statements are **true.**

**A.** Judge Duggan **did not** (Dkt 184, pg 26) "clearly and narrowly drawn so as not to prohibit protected expression" and did not exercise the law demanding narrowly drawn restriction of speech to prevent the violation of Woodward's Civil Rights.

**i.** On January 18, 2012 Judge Duggan ordered Woodward to completely remove everything relating to falsifying student grades.  The court disregarded protected speech

and legal requirements to protect subjective vs objective statements (Dkt 199, pg 12, ln 19) The Court "**Everything relating to falsifying grades**."

**ii.** Judge Duggan ordered the removal of documents Woodward could legally publish; i.e. 5th Semester Final Grades (Dkt 172, pg 44) to cover-up the fraud committed by AUA. The court stated (Dkt 184, pg 25) " **The Supreme Court repeatedly has recognized that an injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights**" Judge Duggan violated the Supreme Court ruling <u>he quoted</u>; violating Woodward's Rights.

The January 18, 2012 hearing was comparable to the Spanish Inquisition.

**iii.** Prior to the hearing Woodward filed two motions asking for the court to clarify the court orders (Dkt 189 and Dkt 190).

**B.** Judge Duggan's orders (Dkt 185 and 221) are outrageous and are an egregious violation of Woodward's Civil Rights: Due Process, 14th and 1st Amendment Rights he suffers to this day. Woodward suffers from these same violations at the hands of the Michigan Court of Appeals, and Oakland County Court.

**C.** AUA was barred by FRCP from producing Exhibits after 4/11/2011. AUA refused to produce any documentation Woodward requested per FRCP 34.

**i.** The court requested AUA produce Exhibits knowing AUA violated discovery FRCP 34 (Dkt 199, pg 21, ln 16).

**ii.** The court ordered Woodward in contempt (Dkt 199, pg 21 and Dkt 199, pg12, ln 9) after being informed the court was violating Due Process per 28 USC 455 (Dkt 199 pg 10, ln 18).

**D.** AUA falsifying student grades proves each of Woodward's seven statements enjoined by court order (Dkt 221, pg 2) are **TRUE**.  Judge Duggan, like the Michigan courts, is protecting AUA and SJMO from the ramifications that "**AUA falsifies its students' grades**" being **true**, as in Woodward's counterclaims as fraud and AUA making false declarations before the courts; is cause to overturn this case, the Michigan Court of Appeals Orders, and Oakland County Court Orders.


**d.** AUA deliberately conspired with SJMO to breech three separate contracts guaranteeing students clinical rotations.   Neal Simon, an officer of the court and university president committed perjury concerning defamation claims; knowingly lying to the district court after being sworn under oath in both the Docket 1 verified complaint and affidavit (Dkt 1, pg 12); sanctions for perjury is dismissal of claims.

**1.** Neal Simon signed the "Affiliation Agreement" (Dkt 172, pg 54-55) between AUA and SJMO; of which each student at SJMO were 3rd party beneficiaries of this contract. SJMO was to provide clinical rotations: "**The Hospital clerkship program will include rotations in Internal Medicine, Surgery, Family Medicine, Pediatrics, and Obstetrics and  Gynecology, and electives.**"

**2.** The AUA 5th Semester Syllabus (Dkt 172, pg 56) "**11. Start  the in-depth study of General Clinical Sciences, including Internal Medicine, Surgery, Pediatrics, Gynecology, Obstetrics, Family Medicine and Psychiatry.**" is another contract and confirms the "Affiliation Agreement" and,

**3.** The Fifth Semester – Preliminary Clinical Medicine Course Guidelines, (Dkt 172, pg 57) "**Rotation in hospital wards (H), Emergency Department (ED), hospital**

**outpatient facility (HO), preceptors office (PO), Rotatoins in outpatient specialty services (either hospital or preceptor's office) Internal Medicine (IM), Surgery(S), Pediatrics (Ped), GYN/OB, Psychiatry(PS)**" is a third contract broken confirming clinical rotations.

**4.** The Fifth Semester Schedule of Clinical Rotations (Dkt 172, pg 58) shows AUA/SJMO premeditated to conspire to defraud each student at SJMO; scheduling only Emergency Medicine (EM), Internal Medicine (M), and Outpatient (A2). AUA defrauded Woodward of 66% of the Clinical Rotations; the EM was scheduled for Sept 10, 2007, the students did not report to the Education Department until Sept. 13, 2007 (Dkt 27-1, pg 19) (AUA violated 20 USC 1011a(a)(1)(B) educational goals)

**5.** AUA broke contracts with Woodward guaranteeing "SHELF" exams, used to pass courses and to prepare students for the United States Medical Licensing Exam, USLME. (Dkt 172, pg 50).

**6.** AUA admits to the contractual relationship with Woodward contained in the Student Handbook.

**i.** AUA violated (Dkt 212-3, pg 19) "student has the right to counsel and to present witnesses and documentary evidence." during grievance hearings (Dkt 212-1, pg 1 par 3) "Rules of the hearing will **be as you experienced in Antigua** (i.e. **no recording device, no legal council**)" Woodward filed the Dec 20, 2007 lawsuit because Woodward knew AUA was violating his Rights of Due Process and the AUA Student Handbook.

**The AUA Grievance Committee Chair admits Woodward was denied Due Process and Rights guaranteed in the Student Handbook during the Committee Meeting on Antigua!**

**ii.** AUA violated (Dkt 212-3, pg 19) "AUA/KMC students are <u>encouraged to address any</u> **<u>academic or non-academic concerns</u>** with their, Professors, Faculty Advisors or Deans." AUA violated Woodward's Rights of speech, AUA <u>encouraged</u>; initiating the Dec. 2007 committee meeting (Dkt 212-1, pg3) "<u>To me, the documents I received are</u> <u>evidence of absurd behavior. To proceed, we need is a grievance statement (or request</u> <u>for grievance committee hearing)</u>".

**iii**. AUA violated (Dkt 212-3, pg 20) "Policy of Non-Discrimination" falsifying student grades.

**iv.** AUA violated (Dkt 212-3, pg 20) FERPA policy. AUA refuses Woodward access to his own student records and AUA disclosed over 150 private student records including Woodward's. AUA proves they are corrupt and heinous; filing this lawsuit (Dkt 1, pg 9) against Woodward because AUA is incompetent and violates, FERPA, Federal Law and their own Student Handbook.

**<u>As an AUA student Woodward had to suffer this cruel and brutal treatment</u>** **<u>imposed on him by AUA's violations of their own Student Handbook.</u>**


**e.** Woodward admits AUA committed perjury. Woodward filed motions that AUA committed perjury prior to discovery (Dkt 16 and Dkt 27). Neal Simon, Susan Zonia, and Jeffrey Yanez were AUA employees that knowingly lied about Woodward after being sworn under oath, committing perjury, prior to AUA filing Docket 1 of case no. 2:10-cv-10978.

**1.** Neal Simon, an officer of the court and university president, knowingly lied after being sworn under oath in both his verified complaint and affidavit (Dkt 1, pg 12); sanctions are dismissal of claims.

**2.** Susan Zonia was an AUA faculty and the Director of Medical Education at SJMO (Dkt 51, pg 35,  Dkt 211-2, pg 10, dep pg 58, ln 19, and Exhibit A).  Susan Zonia was deposed, after being sworn under oath 2/3/2009 (Dkt 212, pg 1) and 7/15/2011. Susan Zonia's Dec. 17, 2007 memo (Dkt 172, pg 60) contains false declarations made before the court.  The memo was requested by AUA's Grievance Committee Chairman, Cain, (Dkt 212-1, pg 3) proving the committee meeting was bias, violated Due Process, and is an artifice of fraud.

**3.** Jeffrey Yanez was an AUA faculty and AUA Program Director for the 5th Semester at SJMO (AUA timesheet Dkt 212-1, pg 50, Exhibit A).  Dr. Yanez was deposed 2/3/2009 (Dkt 212-1, 36) after being sworn under oath.

**4.**  Mr. Buikema committed perjury.  Under the penalty of perjury Mr. Buikema filed Docket 13, "Request for Clerk's Entry of Default".

**A.** Mr. Buikema knew Woodward answered AUA claims during the April 19, 2010 hearing,

**B.** Mr. Buikema knew Woodward intented to return from abroad to defend himself. The case was at stay until Woodward returned from abroad at Mr. Buikema's own suggestion (Dkt 19, pg 61, ln 22)

Mr. Buikema: "A stay of proceedings, of discovery"

The Court: "Sure, yes.  It will be a stay until he gets back."

**C.**  Woodward did answer AUA's claims in Dockets 10 and 11, the court confirmed this.

The Court allowed AUA to request Woodward amend his answers to AUA's claims. AUA filed Docket 38 "Plaintiff's Demand for an Amended Answer". On Nov. 15, 2010, Woodward filed Docket 40, again answering AUA's claims.

**D.** Mr. Buikema wrongfully under the penalty of perjury filed Docket 13 only to harass and delay this case to interfere with the Michigan case. After wasting three(3) months, harassment and burdening Woodward; the courts set aside the entry of default, but denied Woodward's Dockets 16 and 27 requesting dismissal for perjury, obstruction, and contempt.

**E.** Woodward only agreed to disable his website and videos until his return from a work assignment abroad and because of the court's time limitations during the April 19, 2010 hearing. Woodward agreed to disable his website even though Judge Duggan declared AUA's claims were ridiculous, without merit, and AUA's alleged defamation claims are known lies (perjury); Woodward's statements are true (Dkt 19, pg 19, ln 19).

**F.** The Court was aware AUA's claims, Neal Simon's affidavit, were ridiculous, without merit, and AUA's defamation claims are admitted lies. AUA and the court continued to harass and burden Woodward over known frivolous and perjurious defamation claims. AUA's claims should have been dismissed April 19, 2010 as sanctions for perjury committed by Neal Simon, which Woodward file motions for (Dkt 16 and 27).

**G.** The court and AUA knew the claims against Woodward were ridiculous and without merit but continued to harass and burden Woodward by filing another motion for Preliminary Injunction (Dkt 45). Court order (Dkt 221) proves this fact.

**3.** Mr. Buikema admitted to lying in the face of Judge Hluchaniuk a hearing Dec. 22, 2010; telling the judge he would take discovery from Woodward, but almost immediately

left the courtroom without taking any discovery. Mr. Buikema refused discovery he requested from Woodward on Dec. 22, 2010.

**f.** Judge Duggan knew AUA, Neal Simon committed perjury concerning defamation claims during the April 19, 2010 hearing. Judge Duggan lied in his Opinions (Dkt 184) to protect AUA and Neal Simon. Woodward removed newspaper articles from his Website fearful of wrongful imprisonment for contempt by Judge Duggan.

**1.** AUA's defamation claim (Dkt 1, pg 10) "h. AUA **students** are sexually assaulted" Woodward never stated "**students**"; Woodward only stated "**student**".

**A.** AUA's own dockets prove Woodward wrote "**STUDENT**"(Plaintiff's Dkt 8-4, pg 2) "AUA **student** sexually assaulted!"

**B.** AUA sued Woodward for quoting a local newspaper article published by the "Antigua Sun" concerning the sexual assault of an AUA student (Dkt 156-4, pg 18) "Jeffers, 22, on 17 May, 2008, about 3 a.m., stopped a medical student at the American University of Antigua (AUA), while she was on her way home."

**C.** AUA admitted to the Court that an AUA student was sexually assaulted during the first hearing April 19, 2010 (Dkt 19, pg 19, ln 19)

The Court: "That's the spin you put on it. But **the statement itself is true**, "AUA students are sexually assaulted", have they?

Mr. Buikema: "**An AUA student was sexually assaulted**"

**D.** Judge Duggan knew Neal Simons committed perjury. Judge Duggan lied in his Opinion to protect Simon and AUA (Dkt 184, pg 23) "Woodward **no longer** states on his

Case: 12-1128     Document: 45     Filed: 09/24/2012     Page: 17

website that "AUA students are sexually assaulted" (see Request for Admissions No. 22(emphasis added)); **instead, he asserts**: "AUA student sexually assaulted". Woodward never stated "students".

**Judge Duggan violated Woodward's Civil Right of Freedom and Due Process imprisoning Woodward for defending blatant lies by the court** (Dkt 199, pg 21, ln 7). <u>Woodward was imprisoned for reading an Antiguan newspaper article because perjury by AUA is cause to overturn this case and the Michigan case.</u>

**E.** Judge Duggan and AUA disregards Federal Law, The Clery Act, 20 USC 1092(f) written to protect student safety.

**2.** AUA's sued Woodward for publishing USMLE pass/fail rates reported in a newspaper.

**A.** Judge Duggan lied his Opinion to protect AUA and Neal Simon from perjury (Dkt 184, pg 23) "Woodward **no longer** states that "<u>**AUA's student pass rate for USMLE medical board exams is only 22.9%**</u>." (Request for Admissions No. 28.) **Instead Woodward states the** "<u>**Antigua only has a 22.9% USMLE Pass Rate**</u>".

**B.** Woodward never stated "AUA's student pass rate for USMLE medical board exams is only 22.9%".   AUA's dockets prove Woodward stated (Plaintiff's Dkt 8-4, pg 2) **"Antigua only has a 22.9% USMLE Pass Rate!"**

**C.** According to the Daily Herald newspaper (Dkt 17, pg 5) and Academic Medicine (Dkt 17, pg 9) "First-Attempt", "Antigua and Barbuda", "% Pass rate", "22.9".

**D.** There are two medical schools on Antigua (Dkt 17, pg 11).  AUA and University Health Sciences Antigua, UHSA.

**i.** UHSA claims (Dkt 17, pg 13) "We are proud to say that more than <u>**90%**</u> of our graduates pass the USMLE on their first attempt at taking the test.".

Case: 12-1128     Document: 45     Filed: 09/24/2012     Page: 18

**ii.** AUA claims (Dkt 17, pg 12) "Since AUA's inception, USMLE Step I first-time pass rates for all students is **80.6%**"

**iii.** UHSA **90%** USMLE pass rate **plus(+)** AUA **80.6%** USMLE pass rate, divided by two(2) does not equal 22.9% pass rate.  [(90 + 80.6)/2 = 85.3 not 22.9]

**E.** AUA's own published documentation, scattergram (Dkt 17, pg 18) shows AUA's USMLE pass rate is about 50% (Woodward calculated about a 44% USMLE pass rate from the 150+ student grades AUA disclosed used to make the scattergram).

**F.** The court and AUA denied all Woodward's attempts to obtain the actual AUA USMLE pass rates.

**3.** AUA sued Woodward for publishing newspaper articles (Dkt 1, pg 10) "p. The locality of AUA is full of "rape, murder, fraud, and government corruption".

It is insane that Woodward could defame AUA by publishing newspaper articles concerning the island of Antigua.  Woodward is following to morals of Federal Laws to designed to protect students "The Clery Act" 20 USC 1092(f)

**A.** Woodward read an article on the $7 Billion Allen Stanford ponzi scheme on Antigua; Woodward met Mr. Stanford on Antigua and made transactions at Mr. Stanford's bank as a student at AUA.

**B.** Woodward read an article about the death of the AUA student, Haider Raza-Rizvi, who died off the beach "stone's throw" from AUA (Dkt 156-3, pg 30).

**C.** Woodward read an article of the stabbing of a 29-year-old San Francisco State University graduate student murdered on Antigua.(Dkt 156-3, pg 43)

**D.** Woodward read an article on two separate doctors that were murdered on Antigua (Dkt 156-3, pgs 44 & 46)

18

**E.** Woodward read articles about police brutality on Antigua (Dkt 156-3, pg 35)

**F.** Woodward read an article "Known among yachties as "death island"" (Dkt 156-3, pg 37), Woodward found interesting being a sailor.

**4.** AUA sued Woodward because AUA sells (Dkt 156-4, pg 20) "<u>Antigua is an ideal location for studying: serene, secure and sustaining. Antigua provides AUA students with the most modern comforts and familiar lifestyle in the Caribbean, In a stable and safe environment</u>"

AUA's defamation claims against Woodward for publishing newspaper articles is typical of the blatant violations of Civil Rights Woodward had to endure as an AUA student.

**<u>AUA uses committee meetings (and lawsuits) as weapons to silence negative comments.</u>**


**g.** The court refused to listen to oral arguments concerning: Perjury, Falsifying Grades, Breach of Contract, and Reporting to the FBI (Dkt 172). Three pages per topic is absolutely inadequate to defend these issues as stated "**I need more paper to reply to these issues in more detail**" (Dkt 172, pg 2).


**h.** The court chose to allow AUA to file motion for summary judgment (Dkt 143) to protect AUA from contempt for disobeying court order (Dkt 124) and discovery violations that would result in AUA losing the case entirely to Woodward's motions (Dkt 135 and Dkt 136) AUA's summary judgment violates FRCP and court opinions. Judge Hluchaniuk told AUA they had **<u>no basis</u>** to file a motion for summary judgment (Dkt 143) for refusing to accept discovery from Woodward on Dec 22, 2010.

**1.** AUA refused to produce any documents by close of discovery, 4/11/2011. Woodward requested documentation 11/22/2010 per FRCP 34. AUA's motion for summary judgment (Dkt 143) violates FRCP37(c)(1), FRCP 26(a)(1)(A)(iv), and FRCP 34. AUA refused to comply with court orders (Dkt 124) for production FRCP 34 documentation. AUA was without a case as of the close of discovery 4/11/2011.

**2.** Judge Hluchaniuk told AUA they had no basis to write motion for summary judgment (Dkt 143) during the 3/24/2011 deposition.

**A.** In the presence of AUA; Judge Hluchaniuk told Woodward (Dkt 170, pg 93, ln 13) "Your obligation is only to make it available to them if they chose not to take it then that's **they have no basis to complain later**, but it's important so that we know what it is that you made available" and (Dkt 170, pg 91, ln 10)

"What, what you need to do to document the fact that you've made it available is to identify in some list the items that you have presented to them and made available to them so that its clear what, what, what, they had an opportunity to see, **if they elect not to look at it that's their problem not yours**"

**B.** Woodward listed the discovery available to AUA on Dec. 22, 2010 in an email to Mr. Buikema (Dkt 83, pg 8)

"**Depending on the Decisions and Order** by the Honorable Judge Michael Hluchaniuk: **Please schedule time after the December 22nd Hearing to sign-for(verify receipt) and receive approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, Request for Admissions, and Request for Production.**

**What you receive will depend on the Order and Decision of the Court.**"

This email also confirms the intent of Woodward's motion for protective order (Dkt 56)

**C.** On Dec. 22, 2010 Woodward, Mr. Buikema, and Judge Hluchaniuk verified all the discovery AUA requested from Woodward was available at the hearing and Woodward's intent to give it to AUA (Dkt 205, pg 41)

Woodward "**This is all of my documentation that I would like him to sign for today. He's seen it. Your scheduled, I sent you an email concerning that, that today would be a good time for you to sign for this information**"

**D.** Judge Hluchaniuk told AUA to take the discovery from Woodward. (Dkt 205, pg 45)

Woodward "**Any documents that he request, all of his answers to his interrogatories, all of his answers or his admissions, all of his documents is here**"

Mr. Buikema "**It's there but <u>I didn't address it quite intentionally</u>**. It's not before you today."

Court "It's not scheduled for today. **I'm just noting the existence of it.** And Mr. **Woodward is saying that he intends to comply with that today.** Whether that's actually comes to pass is another issue, which we may address at a later time. **<u>But I certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion.</u>**"

**E.** Mr. Buikema admitted during the Aug. 11, 2011 hearing that he refused to take the discovery from Woodward on Dec. 22, 2010 (Dkt 169, pg 24, ln 23)

Mr. Buikema "**<u>But it's true, I'll stipulate, for the record, that I left the hearing without accepting the banker's boxes that Mr. Woodward brought to that hearing</u>**"

Case: 12-1128    Document: 45    Filed: 09/24/2012    Page: 21

Judge Hluchaniuk told AUA they had no basis to complain after they refused discovery. Judge Hluchaniuk told Woodward he complied with all his FRCP26 discovery obligations on Dec. 22, 2010. AUA lied to Judge Hluchaniuk during the Dec. 22, 2010 hearing.

**3.** Judge Duggan is protecting AUA, falsely stating the date Woodward served answers to AUA's request for admissions. Judge Duggan states in his Opinion (Dkt 184, pg4, last par) "AUA filed its pending for summary judgment, relying in large part on Woodward's failure to timely answer its request for admissions"

and (Dkt 184, pg 4, 2 par)

"Woodward did not timely answer; however, he apparently served late responses to AUA's requests "at his reconvened deposition" which the Court gleans to have been in **March 2011**."

This is a false statement to establish prejudice for AUA and bias against Woodward. AUA refused discovery from Woodward on Dec. 22, 2010 before Judge Hluchaniuk; Judge Duggan knew this fact prior to writing his opinion.

**4.** Woodward filed motion for protective order (Dkt 56) which was not heard until Dec. 22, 2010 and the order was not filed until 1/05/2011 (Dkt 88). During the Sept 20, 2011 hearing Woodward defended this (Dkt 204, pg 20, ln 17)

The Court **"Why shouldn't you have responded to the request for admissions?"**

Woodward **"I thought my protective order would have."**

Woodward's email to Mr. Buikema confirm this (Dkt 83, pg 8)

**"What you receive will depend on the Order and Decision of the Court."**

22

**j.** The court denied Woodward justice from motions that would rule the entire case in favor Woodward's over AUA for discovery violations (Dkt 135 and 136) and AUA's refusal to obey court order (Dkt 124). The court ruled in favor of AUA's motion for Summary Judgment (Dkt 143) and ruled Woodward's motions for AUA's discovery violations, including contempt and violation of Federal Laws, moot (Dkt 186).

**1.** AUA's summary judgment (Dkt 143) filed 4/29/2011, must be denied by the court since it contains Exhibits, AUA is barred from producing.

**A.** Woodward requested discovery from AUA, which was due Dec. 22, 2010. AUA did not produce any documentation per FRCP 34 by the close of discovery, April 11, 2011.

**B.** AUA was barred from producing exhibits for failing to answer court orders (Dkt 124) "Failure to file a response may result in sanctions, including granting all or part of the relief requested by the moving party"; granting Woodward all relief; but the court made any relief to Woodward moot (Dkt 186).

**C.** AUA was barred from defending their case per FRCP 37(c)(1), per FRCP 26(a)(1)(A)(iv), and FRCP 34. AUA refused to defend their claims and produce requested documents, including Woodward's own student records; violating Fed. Law

**2.** AUA produced no credible evidence, and is barred from doing so, to support any damages. AUA is barred from filing any Exhibits after 4/11/2011, for failing to produce any documentation per Woodward's FRCP 34 requests.

Judge Duggan's order proves Woodward is innocent of Counts I, II, and III, nearly 90% of Neal Simon's allegations and defamation claims.

Neal Simon, an officer of the court and university president, knowingly lied under oath in Docket 1 verified complaint and attached affidavit (Dkt 1, pg 12). Neal Simon's word, signature, oath, and affidavits are worthless and not credible evidence.

**A.** AUA's 12-1128 brief states on page 10 "AUA appended to its Motion for Summary Judgment an affidavit of its president Neal Simon to evidence AUA's reputational damage. (R171)." AUA is barred from producing exhibits prior to R171.

**B.** Judge Duggan's Opinion (Dkt 184, pg 26) "AUA's only proof with respect to damages is its president's statement that "AUA has suffered damages stemming from the Defendant's publication of his website" (Doc. 171 p 10)." Considering the sophistication (or lack thereof) of Woodward's website and the content of the website, this Court cannot conclude based on President Simon's affidavit, alone, that any damages could be significant." AUA fails to meet defamation elements; AUA can't prove damages. Judge Duggan allowed AUA to violate Federal Rules for filing this affidavit after 4/11/2011. The affidavit itself is not credible, the court proved Neal Simon lies under oath (Dkt 1, pg 12) in court order (Dkt 221).

**3.** The court ordered AUA to respond (Dkt 124), AUA violated court orders refusing to produce documentation FRCP 34, which included Woodward's own student records and violating Federal Law, Family Educational Rights and Privacy Act, FERPA 20 U.S.C. 1232(g) and AUA's Student Handbook.

**4.** AUA answered FRCP 36 request for admissions in bad faith, wrongfully objecting to 62.5% (35 out of 56) requests (Dkt 121, pg 27-40) violating FRCP 36(a)(5). The bad faith answers directly relate to the enjoined statements.

Example: Woodward is enjoined from stating: "**AUA falsifies its students' grades**"

(Dkt 121, pg 37)

"Request 46.  Please admit that Steven Woodward earned and 80% for his 5[th] Semester Final Grade.   Response: **Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks"**

(Dkt 121, pg 38)

"Request 49: Please admit that the AUA 5[th] Semester Syllabus defined how the 5[th] Semester course was graded.  Response: **Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks"**

"Request 50: Please admit that the AUA 5[th] Semester Syllabus states" III. Evaluation and Grading

A) Passing Grade Minimal requirements

*Minimal total course grade 75%

*Minimal lecture attendance 85% (18 lectures)

*Minimal practical session attendance 85%

*Minimal Hospital lectures and other Academic sessions attendance 50%

*Minimal out-patient session attendance 90%

*Minimal Correlation Course questions 80% (1,600)

*Minimal total quizzes score 60%

*Minimal final written exam score 80%

Minimal final practical exam score 80%

Response: **Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks"**

Woodward argues AUA did not answer 89% (50 of 56) FRCP 36 Request for Admissions according to FRCP 36(a).

**5.** The court is bias against Woodward; ensuring Woodward did not obtain discovery from AUA or justice for AUA discovery violations. Woodward's attempts at obtaining discovery from AUA were ordered moot (Dkt 186). AUA was allowed to violate court orders (Dkt 124). The court denied Woodward's requests for subpoenas. AUA did not have to answer any Interrogatories. The court allowed AUA to refuse Woodward access to his own student records, violating Federal Law, FERPA 20 USC 1232g.


**k.** Woodward's counterclaims are distinct and different from the Michigan Court of Appeals or Oakland County Court case. AUA refuses to produce Woodward's Student Records, Counterclaim (Dkt 193). The district court is protecting and aiding AUA in violating Federal Law, FERPA 20 U.S.C. 1232g refusing Woodward access to his student records.. The court refuses any relief to Woodward by motions to compel (Dkt 121 and 136) or by counterclaim (Dkt 146 and 193) blatant bias and violation of Woodward Civil Rights Due Process, 1st, 14th amendments, or basic justice.


**m.** Woodward filed information with the FBI online and physically visited the FBI. The FBI agent **requested** copies of documents from Woodward about AUA.

**n.** Court order states (Dkt 221, pg 1) "**On June 1, 2010 AUA informed the Court that it is waiving its right to any damages incurred up to this time.**" AUA's admits intent to blackmail and depriving Woodward's Civil Right to the access of the Appellate Court and publishing information that does not violate court order (Dkt 221). Supporting Woodward's counterclaim (Dkt 193). AUA 12-1128 brief, pg 4 "**waiving damages claims so long as Defendant chose not to appeal**". AUA has no credible proof of damages other than an affidavit of a court proven liar Neal Simon.

**o.** Judge Duggan ruled Woodward had permission to appeal (Dkt 199, pg 13, ln 5) The Court "**Fine. We'll go with that. Take that up with the Court of Appeals, okay. I've ruled**"

Woodward shut down his website because the court violated Woodward's Civil Rights (Dkt 199, pg 36, ln 5) Woodward told Judge Duggan "**If you want me to do that, I'll shut off everything and I'll go to the Appeals Court**" not as any agreement with AUA.

**p.** Neal Simon lied in Docket 1 concerning the jurisdiction and Woodward's residence. AUA and Trinity docket states (Dkt 156-2, pg 16) "**Since 2007, Woodward has been living on a sailing boat yacht in St. Maarten**". Neal Simon's (Dkt 1, pg 2) claim that Woodward live on a boat near Flint, Michigan in March is absurd. Woodward traveled to Michigan from abroad to defend his Civil Rights.

**q.** Woodward had full and absolute consent by AUA to publish "any academic or non-academic concerns" (Dkt 212-3, pg 19), Woodward was denied his right to argue this

claim.  Woodward had consent per the 5th Semester Guidelines (Exhibit B) **"You may choose any user name you would like to use"**.

**r.** The court is aware Woodward is indigent.  Woodward will do what the court requests to defend his family name,  professional and academic reputation, Civil Rights, and to protection other United States citizens from AUA.   AUA and the courts have personally, professionally, and academically assassinated Woodward of which there is no remedy.

3/21/12

28

Case: 12-1128    Document: 45    Filed: 09/24/2012    Page: 29



Diana Hodarnau, MD
Clinical Professor



Mohammed Khan, MD
Adjunct Professor



Monica Nicola, MD
Adjunct Professor



Valerie Payne-Jackson, MD
Clinical Professor




Robert Robinson, MD
Clinical Professor

Mike Stachecki, MD



Jeffrey Yanez, MD
Associate Professor



Susan Zonia, PhD
Associate Professor

**Staten Island, NY – *William Tursi, Course Director***

Edward Arsura, MD          William Tursi, MD

**Atlanta, GA – *Cecil Bennett, MD, DABFP & Greg Zakers M.D., DABFP – Course Director***

*Glenda Ann Bennett*
*November 4, 2010*

**EXHIBIT A**

http://www.auamed.org/node/19

11/4/2010

- study the post-test on-line explanatory material provided by EM and, if necessary textbooks, summaries and other materials studied during the Basic Courses.
- Retake the tests and quickly review the materials in preparation for the Shelf.

C)    Registration (Exam Master On-Line Registration for AUA 5th Semester Program)

All 5th Semester program students are REQUIRED to register with Exam Master to receive their examinations. Students are responsible for setting up their own accounts properly and promptly. To register please follow the steps outlined below.

Go to the AUA 5th Semester entry: **http://www.exammaster2.com/wdsentry/aua-balt.htm**
Click "Click to Start" and Click "Not Registered Yet?"
To continue, click **[I Accept]** on the Licensing Agreement page

Complete the registration form:
In the field that asks for your First Name put your FIRST and LAST NAMES.
In the field that asks for your Last Name put your AUA 5th Semester Program City (Baltimore, Miami, or Pontiac).
You may choose any user name you would like to use.
Enter your Email address. If you have never signed up for Exam Master you may use any email. If you have used Exam Master before you will need to use a new email address.
If you need a new email address you may obtain one at hotmail.com, gmail.com, or yahoo.com free of charge.
Remember that all system and exam related emails will be sent to this email account.
For the City and State fields use your AUA 5th Semester Program City [Baltimore, Maryland (MD); Miami, Florida (FL); Pontiac, Michigan (MI)]
Postal Codes are as Follows: b=21227, m=33138, p=48341
For Country select United States.
Click "Submit Registration".

Confirmation of registration and your temporary password will be emailed to you immediately.

NOTE:

1. Students with Macs will find it easier to access Exam Master using Internet Explorer—the most recent version available can be found by scrolling down through this site and downloading IE: http://www.pure-mac.com/webb.html

2. If there are problems contact customer_service@exammaster.com or call 1-800-572-3627 option 3.

VI.    PORTFOLIO

Each student will elaborate a portfolio during the fifth semester that includes write-ups, summaries of all academic sessions attended, and clinical work performed. The bound and indexed portfolio, due by the end of the twelfth week, consists of the following parts:

FIFTH SEMESTER - PRELIMINARY CLINICAL MEDICINE
(SEPTEMBER 6 - Decermber 21, 2007)
09/05/07 - JEC - VH

 EXHIBIT B

41

## Certificate of Word Count

Mr. Woodward Certifies that the Word Count of "**Appellant Reply to Appellee Brief**

**Case Nos. 12-1128/12-1584/12-1585/12-1738**" is: **6,635  (Not counting Exhibits)**

Microsoft Office Word 2003

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810)235-7267

9/21/12

1

## Certificate of Service

The undersigned certifies that the foregoing **"Appellant Reply to Appellee Brief Case Nos. 12-1128/12-1584/12-1585/12-1738"** and this Certificate of Service were served upon Appellee (Plaintiff) by U.S. mail to American University of Antigua, via council, Eric A. Buikema (P58379), 322 West Lincoln Ave, Royal Oak, Michigan 48067

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507
(810)235-7267

9/21/12

1

**PRIORITY MAIL**

**UNITED STATES POSTAL SERVICE**

U.S. POSTAGE PAID
GRAND BLANC,MI
48480
SEP 21 12
AMOUNT
**$5.90**
00033356-13

Flat Rate Mailing Envelope

Visit us at usps.com



**PRIORITY® MAIL**

**UNITED STATES POSTAL SERVICE**

For Domestic and International Use

From    Steven Woodward
7211 Brittwood Ln
Flint, MI 48507

**TO**    United States Court of Appeals
For the Sixth Circuit
100 East Fifth Street, Room 540
Potter Stewart U.S. Courthouse
Cincinnati, Ohio 45202-3988
Attn: Linda Niesen

Label 228, January 2008



United States Postal Service®
**DELIVERY CONFIRMATION™**

0312 1430 0002 9635 6573

PS00001000014

EP14F
OD: 12.5 x 9.5